# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 04-3764

ROBERT J. SMOTHERS,

*Petitioner-Appellee,*

v.

GARY R. MCCAUGHTRY, **Warden,**

*Respondent-Appellant.*

———————

**Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 883—J.P. Stadtmueller,** *Judge.*

———————

ARGUED MAY 5, 2005—DECIDED AUGUST 9, 2005

———————

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* Robert Smothers stabbed and killed his friend, Jay Meyer, after an argument. At trial, Smothers claimed that Meyer was choking him, and the stabbing was in self-defense. During closing argument, the prosecutor contrasted Smothers' trial testimony with his demeanor and statements on a 911 call recorded shortly after the stabbing. The jury convicted Smothers of second-degree intentional homicide. Smothers petitioned for a writ of habeas corpus, which the district court granted, on the

ground that Smothers' counsel was ineffective by failing to object to the prosecutor's closing argument. We reverse the grant of the writ.

*Background*

On the evening of March 23, 1996, Smothers and Meyer were drinking at a local tavern. They stayed at the tavern for about two hours. Driving home in Meyer's truck, the two began arguing because Meyer had not wanted to leave the tavern so soon. Upon arriving at Smothers' home, the argument became more heated. Smothers eventually told Meyer to "go home and beat [his] wife and kid." According to Smothers, Meyer responded by starting to choke him. He testified that he first tried to fight Meyer off with a set of house keys, but then resorted to using a pocketknife. At some point, he opened the door of the truck and fell out. Meyer also exited the truck, caught Smothers, pinned him to the ground, and resumed choking him. Smothers testified that he used the knife several times to jab and poke at Meyer, hoping to stop the attack. Fearing for his life, Smothers finally stabbed Meyer in the chest with the knife. Smothers testified that Meyer appeared badly hurt, but got up and walked back over to the truck.

Smothers then ran into his apartment building and told his neighbor, Deborah Cook, to dial 911. Meanwhile, he went into his apartment to get a drink of water and take a blood pressure pill. When he left his apartment a few minutes later, Cook was on the line with the 911 operator and asked him if he wanted to speak to the operator. Smother took the phone; the following is a transcript of the call from that point:

SMOTHERS:   Hello.

911:  Bob, what happened?

SMOTHERS:   Well the dude got stabbed and he's here bleeding.

911:   Okay. Is he—is he still concious [*sic*]?

SMOTHERS:   Multiple stabs.

911:   Mul—he got stabbed multiple times?

SMOTHERS:   Right.

911:   Okay. Where is he? We got to get the rescue squad for him.

SMOTHERS:   6345- 26th Avenue.

911:   Okay. Okay. Bob, who stabbed him? Do you know who stabbed him?

SMOTHERS:   Well, I'm not ready to make no statement.

911:   Okay. Okay. Who, what's the name of the person that got stabbed?

SMOTHERS:   Um, well, is that relevant right now?

911:   Well, I just wanna know his name. What's his first name?

SMOTHERS:   James Meyer.

911:   Okay. That's fine. That's fine. And you're Bob.

SMOTHERS:   Yeah, I'm Bob.

911:   Okay. Now Bob, do you live in, do you live in the uh lower there?

SMOTHERS:   Okay. The ambulance is here then.

911:   Okay.

SMOTHERS:   I'll be off.

911:   Bob, stay on the line. Don't hang up.

[END OF CALL]

Smothers was arrested that evening and charged with first-degree intentional homicide. He chose not to make any statements about the stabbing until his trial. At trial, he took the stand and testified that he acted in self-defense, as detailed above. During closing argument, the prosecutor argued that Smothers fabricated his version of events and was not really acting in self-defense that night. As part of this line of argument, the prosecutor commented on and compared Smothers' demeanor and words during the 911 call to his trial testimony. Specifically, the prosecutor made the following comments:

> The 911 call. That shows a lot. That 911 call, that perhaps 30 second, 45 seconds where you hear Mr. Smothers on that call, tells you volumes. Tells you volumes about the state of mind of Mr. Smothers and what happened that night.

> Was he out of breath? Was his voice raspy? Could he hardly speak from being choked? Was he upset, remorseful, frightened? He says the dude got stabbed. His—he got stabbed. It's not like I stabbed him. He got stabbed, like the knife somehow or somebody else stabbed him. I'm not responsible. He got stabbed. I didn't do it.

> Multiple stabs. He says right on the phone multiple stabs. He knew at that point that he had stabbed him multiple times. The dispatcher talks to him a little bit later, and he says, I'm not ready to make no statement. That point he says I'm not ready to make no statement. Already Mr. Smothers in his own way is starting to think how he's going to extricate himself from this situation, a very difficult situation.

> He's got a dead body out in his driveway. There's blood all over the place. He can't move that body. He can't move himself. He can't get rid of all the blood over

himself. He's already—his mind is working a little bit saying I'm not ready to make no statement. That's March 23rd.

Yesterday, September 11th, a long time has passed since March 23rd, since then Mr. Smothers has been charged. He's become represented by Mr. Rose. He's had an opportunity to get and review the police reports, the witness statements, and now he's ready to make a statement. I was in danger of being killed. I believed my life was in danger. That is his statement September 11th of 1996.

Mr. Smothers knows when he's testifying that the only other person who was involved in this incident is not going to contradict him. He knows after five months, five-plus months that he can give a statement now, he can talk about that incident, and he knows that James Meyer is not going to stand up and say, wait a minute, ladies and gentlemen, it didn't happen that way.

The district court, relying on *Doyle v. Ohio*, 426 U.S. 610 (1976), determined that the prosecutor improperly used Smothers' post-arrest silence to impeach his testimony, violating the Due Process Clause of the Fourteenth Amendment. The court further determined that Smothers' counsel performed deficiently by failing to object to the prosecutor's line of argument.

## *Discussion*

Smothers filed his habeas petition after April 24, 1996; accordingly, the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, governs our review. A federal court may not issue a writ of habeas corpus unless the state court proceedings either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). We find that the Wisconsin Court of Appeals' adjudication of Smothers' claim was not contrary to, or an unreasonable application of, clearly established federal law as articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To obtain relief, Smothers must show that the Wisconsin Court of Appeals' holding that his trial counsel did not render ineffective assistance was either contrary to, or an unreasonable application of *Strickland*. Under *Strickland*, a claim of ineffective assistance requires Smothers to show that his counsel's performance was deficient and that it prejudiced his defense. 466 U.S. at 687.

In order to determine whether the Wisconsin court's holding regarding *Strickland* is correct, we must first determine whether the prosecutor's comments were impermissible. The district court concluded that the prosecutor's comments were in violation of *Doyle* and that Smothers' counsel's failure to object was deficient. In arriving at this conclusion, the district court held that the prosecutor's comments referred not only to Smothers' silence before he received *Miranda* warnings, but also to his post-*Miranda* silence. We disagree.

The prosecutor specifically compared Smothers' statements during his pre-*Miranda* 911 call to his trial testimony. The prosecutor drew a contrast between Smothers' reaction and comments at the time of the incident—"I'm not ready to make no statement"—to his testimony several months later, after he had the time to concoct a story to exonerate himself. Rather than *Doyle*, which invalidated impeachment based on post-*Miranda* silence, this case is more appropriately analyzed under *Jenkins v. Anderson*, 447 U.S. 231

(1980), and *Fletcher v. Weir*, 455 U.S. 603 (1982). The Court in *Jenkins* and *Fletcher* distinguished *Doyle* and established that use of pre-arrest and pre-*Miranda* silence to impeach a defendant's credibility does not run afoul of the Constitution. That is what the prosecutor did in this case. In essence, he asked the jury to contemplate why Smothers did not tell his neighbor or the 911 operator on the night of the incident the facts that he later testified to at trial. The prosecutor did not invite the jury to infer that Smothers was guilty based on his invocation of his right to silence; rather, he used the 911 tape to show that Smothers did not tell the 911 operator that he had been attacked, which permitted an inference that he made up his self-defense story later to fit other evidence in the case. This was an appropriate argument, and Smothers' attorney was not deficient in failing to object to it.

## Conclusion

The Wisconsin Court of Appeals correctly applied *Strickland* because Smothers' counsel was not deficient; an objection to the prosecutor's closing argument would have lacked merit. We REVERSE the decision of the district court and REMAND with instructions to deny the writ of habeas corpus.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*