50 A.3d 632

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. MANAF STAS, DEFENDANT–APPELLANT.

Argued March 27, 2012—Decided September 12, 2012.

40

*Ronald S. Fava* argued the cause for appellant.

*Keith E. Hoffman,* Senior Assistant Prosecutor, argued the cause for respondent (*Camelia M. Valdes,* Passaic County Prosecutor, attorney).

Justice PATTERSON delivered the opinion of the Court.

The Court considers the appeal of defendant Manaf Stas, who was convicted of allowing an intoxicated person to operate a vehicle, over which he had custody and control, in violation of *N.J.S.A.* 39:4–50(a). Defendant and another individual, Joseph Putz, were involved in an automobile accident in a minivan owned by defendant's sister, minutes after leaving a bar where both had been drinking. After police arrived on the scene, Putz told the investigating police officer that he had been driving the vehicle at

the time of the accident. After failing field sobriety tests, Putz was arrested and charged with driving while intoxicated (DWI) in violation of *N.J.S.A.* 39:4–50(a).

Defendant stood nearby in silence as Putz told police that he had driven the car, failed field sobriety tests, and was arrested. He offered no comment on Putz's confession to being the driver at the time of the accident. Given Putz's admission that he was the driver, the police did not subject defendant to field sobriety tests or administer a breathalyzer. Instead, defendant was given a summons under *N.J.S.A.* 39:4–50(a) for allowing Putz, while intoxicated, to drive the minivan.

Defendant and Putz were jointly tried in municipal court. In their testimony, both defendants offered an account of the relevant events that sharply diverged from the story given by Putz to the police immediately after the accident. Putz testified that defendant had been the driver. He stated that his representation to the police at the scene of the accident that he was the driver had been a lie. Defendant corroborated Putz's revised account, testifying that he, not Putz, had been driving his sister's minivan at the time of the accident.

Rejecting this testimony, the municipal court found defendant and Putz guilty of different violations of *N.J.S.A.* 39:4–50(a). Defendant was convicted of allowing an intoxicated driver to drive a car under his custody and control, and Putz was found guilty of DWI. The municipal court relied in part on the fact that defendant had stood by in silence while Putz told police that he was the driver and was arrested, and had not advised the police that he, not Putz, had been driving the car when the accident occurred. Defendant appealed, and the Law Division conducted a de novo review of the municipal court's decision, and also convicted defendant. The Law Division relied upon defendant's silence while Putz was questioned and arrested, construing that silence to be "an admission on [defendant's] part."

Defendant appealed, and an Appellate Division panel affirmed. The panel rejected defendant's contention that the State's evi-

dence was insufficient to support his conviction for allowing an intoxicated driver to use the minivan under defendant's control in violation of *N.J.S.A.* 39:4–50(a). It held that Putz's statement to police officers that he, not defendant, was driving was admissible against both defendants as a statement against interest under *N.J.R.E.* 803(c)(25). The Appellate Division panel did not decide whether the Law Division's reliance upon defendant's silence at the scene of the accident constituted error, because, in its view, the record contained more than sufficient evidence apart from defendant's silence to support his conviction. The panel concluded that if the Law Division's invocation of defendant's silence constituted error, it was harmless.

We now reverse, and remand to the municipal court for a new trial. We conclude that defendant was entitled to the protection of the constitutional, statutory and common law privilege against self-incrimination in the quasi-criminal proceedings before the municipal court and the Law Division. We hold that the Law Division's use of defendant's silence as substantive evidence of his guilt and for the purpose of assessing his credibility violated defendant's federal constitutional privilege against self-incrimination, and his state statutory and common law privilege against self-incrimination. Given the prominent role that defendant's silence played in his conviction, we disagree with the Appellate Division panel that the Law Division's reliance on defendant's silence constituted harmless error, and find that this error was "clearly capable of producing an unjust result," constituting plain error. *R.* 2:10–2. We reverse defendant's conviction, and remand for a new trial.

I.

At about 1:30 a.m. on April 16, 2008, defendant arrived at Duffy's Bar and Grill in Paterson, New Jersey, driving a green Dodge Caravan minivan that belonged to his sister. Duffy's was defendant's second stop that night; he had previously consumed at least two beers at a friend's house. At Duffy's, defendant struck

up a conversation with Putz, whom he recognized as a patron of the bar and who drank at least six beers during the course of the night. Although defendant and Putz had never met until that night, defendant offered Putz a ride home after Duffy's 3:00 a.m. closing.

Fifteen minutes later, Sergeant Jeffrey Vanderhook and two other officers were dispatched by the Hawthorne Police Department to respond to a motor vehicle accident. Arriving at the scene, Sergeant Vanderhook observed a green minivan in the middle of the road, with front end and tire damage and red paint from another car scraped on it. The officers also located a red Mazda sedan, with rear damage on the driver's side, that had been shoved onto the sidewalk from a parking place on the street. When the officers arrived, defendant and Putz were walking around the outside of the minivan surveying the damage.

Sergeant Vanderhook exited the vehicle and was approached by Putz, while defendant was asked to stand with the other officers on the opposite side of the street. Putz, who smelled of alcohol and "was swaying side to side," told Sergeant Vanderhook that he had been driving the minivan on his way home from Duffy's after drinking six beers. He advised the officer that he had stopped in the road because of a flat tire. With Putz's consent, Sergeant Vanderhook commenced a series of field sobriety tests, but those tests were aborted after Putz struggled to remain standing. Sergeant Vanderhook arrested Putz for operating a motor vehicle under the influence of alcohol, read him his rights under *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), and seated him in the back of a police vehicle. While Putz was interrogated, tested for intoxication and arrested, defendant stood nearby observing the proceedings. Other than to respond to the officers' questions about his identity and the vehicle, defendant said nothing.

Sergeant Vanderhook then checked on the registration of the minivan, and learned that it was registered not to Putz but to defendant's sister. Defendant confirmed to the officer that he had

borrowed the vehicle from his sister. Given Putz's admission that he had been the driver, the officer did not conduct field sobriety tests or otherwise evaluate defendant for intoxication. He issued a summons to defendant for permitting an intoxicated person to operate a vehicle within his custody and control, in violation of *N.J.S.A.* 39:4–50(a). Defendant was then allowed to leave the scene.

Riding in Sergeant Vanderhook's vehicle on his way to the police station, Putz provided further details about the incident. He said that although defendant had driven the minivan when the two men departed from Duffy's, Putz asked defendant to pull over and allow him to drive, because defendant was having difficulty driving. At the station, Putz was further questioned and submitted to two breathalyzer tests, which recorded his blood alcohol content at 0.14% and 0.15%. Sergeant Vanderhook issued him summonses for careless driving, *N.J.S.A.* 39:4–97, DWI, *N.J.S.A.* 39:4–50(a), and driving with a suspended license, *N.J.S.A.* 39:3–40, as his license had been suspended because of previous DWI-related offenses.

## II.

Defendant and Putz, each represented by counsel, were jointly tried in Woodland Park Municipal Court on March 10, 2009. The State's sole witness was Sergeant Vanderhook. He testified about his dispatch immediately after the April 16, 2008 accident, his observations of the vehicles, and Putz's admissions that he had been driving when the accident occurred. Defendant's counsel did not object to the officer's testimony about Putz's statements. Sergeant Vanderhook also testified that he had discussed the vehicle with defendant, but he did not recall at the time of trial whether defendant had made any admissions during their discussions. In addition to presenting the officer's testimony, the State admitted into evidence the breathalyzer test results reflecting Putz's blood alcohol content shortly after the accident. The State did not introduce evidence that defendant was silent while Putz

was questioned, tested and arrested, or urge the municipal court to find that defendant's silence was evidence of his guilt.

At the close of the State's case, counsel for Putz sought to dismiss the charges for careless driving and driving while suspended, but not the DWI charge against Putz. Defendant made no motion for a judgment of acquittal at the close of the State's case.

The first defense witness, Putz, presented to the municipal court a revised version of the relevant events. Putz testified that it was not he but defendant who was driving when the accident occurred. He said that defendant missed a turn, hit the parked Mazda and continued to drive notwithstanding the impact, prompting Putz to fear that his life was in danger. Putz added that his representations to the officer at the scene and on the way to police headquarters had been the product of confusion and stress:

> Well I guess [Sergeant Vanderhook] walked up to me and he assumed that I was driving and I kind of went with it. I don't know why I said that I was driving, but I think I did. But I truly believed that we were both in trouble. And we were separated and I thought we were both in trouble. And I was just—I just went along with it. I was—I was pretty out of it.
>
> . . . .
>
> I didn't clearly state anything. [Sergeant Vanderhook] assumed I was driving and then I just—we went through the whole series of tests and everything and I didn't really realize that I was taking responsibility for the accident.

Cross-examined by the prosecutor about why he was willing to assume responsibility for the accident to protect defendant, whom he barely knew, Putz said that he could not explain his statements to the police shortly after the accident, but insisted that those statements had been untrue.

Defendant then testified, corroborating Putz's account of the relevant events. He said that he was attempting to follow Putz's directions from Duffy's to Putz's home when he drove into the other vehicle, and suggested that the accident was caused by a flat tire. According to defendant, he and Putz were inspecting the vehicle when police arrived. Defendant confirmed that he watched while Sergeant Vanderhook administered field sobriety tests and arrested Putz.

The issue of defendant's silence was initially raised by counsel for Putz, who asked defendant whether there was "any reason" for him to have told the police that he, not Putz, had been the driver. Defendant responded that there was, because as an emergency response volunteer "I had some moral obligation, but at the same time it's not moral because I should have told the truth to the officer." Defendant stated that he did not tell the officer that he had been driving because he was "afraid" to, because he, like Putz, had been drinking.

In summation, defendant's counsel argued that notwithstanding a change in both defendants' accounts that "sounds like an amazingly convenient recent invention," there was insufficient evidence for a conviction. Putz's lawyer acknowledged his client's "admission at the scene," but argued that Putz's trial testimony should be held to overcome that admission and compel his client's acquittal for DWI.

In an oral decision issued on March 24, 2009, the municipal court found both defendants guilty of violating *N.J.S.A.* 39:4-50(a). Although he was acquitted of careless driving and driving with a suspended license, Putz was convicted of DWI, and defendant was convicted of allowing Putz to drive his sister's minivan while impaired. *N.J.S.A.* 39:4-50(a). The municipal court relied in part upon defendant's silence as Putz was questioned, field-tested and arrested, noting that defendant's protestations of moral responsibility should not be "in the same sentence as standing by watching somebody being arrested for driving while under the influence, if you, in fact, were the one operating the car." On April 14, 2009, the municipal court sentenced both defendants to 180 days in jail, ninety days of which could be served in an intoxicated drivers' resource center, ten-year license and registration suspensions, and various fines and other monetary penalties. The sentences were stayed pending appeal to the Law Division.

Pursuant to *Rule* 3:23-8(a), the Law Division considered the appeals of defendant and Putz at a hearing on November 18, 2009. Both defense attorneys argued that in the absence of witnesses

who could testify with personal knowledge of the identity of the minivan's driver when the accident occurred, and in light of defendant's sister's ownership of the vehicle and the defendants' testimony that defendant was the driver, the municipal court had erred in convicting defendant and Putz. For the first time, defendant's counsel argued that Putz's statements to the police that he was the driver constituted hearsay that was inadmissible against defendant and that should not be considered by the Law Division. Also for the first time, counsel for Putz objected to the use of defendant's silence, and any inferences from that silence, as a violation of "both Constitutions, both Federal and State." Counsel for defendant did not join in that objection.

The Law Division reviewed the case de novo. It relied upon defendant's silence during police questioning of Putz as affirmative evidence of both individuals' guilt:

> There is no direct testimony from Mr. Stas that or nothing indicating that he directly told the officer [ ] who was driving the vehicle. I don't think there's a question that he told the officer that the vehicle did belong to his sister. But the fact of the matter is that he, also, stated, basically, on Page 93 [of the municipal court trial transcript] that he knew that Mr. Stas [1] was being arrested and that he knew that he was going through a test. And he said it was driving under the influence. So he knew what was going on, and I think his silence in those circumstances in it of itself is an admission on his part.

The Law Division convicted both defendant and Putz for violating *N.J.S.A.* 39:4–50(a).

Defendant appealed, and an Appellate Division panel affirmed his conviction. The panel first concluded that Putz's statement constituted hearsay, but was nonetheless admissible against Putz under *N.J.R.E.* 803(c)(25) as a statement against interest. Notwithstanding *N.J.R.E.* 803(c)(25) and the United States Supreme Court's constraints on the admission of a statement of a codefendant at a joint trial in *Bruton v. United States*, 391 *U.S.* 123, 126, 88 *S.Ct.* 1620, 1622, 20 *L.Ed.*2d 476, 479 (1968), the panel held that

---

[1] This reference to defendant, rather than Putz, is clearly an error in the transcript; the testimony to which the Law Division referred concerned defendant's knowledge of the reasons for Putz's arrest.

Putz's statement was properly admitted because both defendant and Putz testified at their joint trial, affording defendant a chance to cross-examine Putz. Accordingly, the panel held that defendant's conviction was adequately supported by the evidence.

The Appellate Division panel briefly touched upon defendant's argument that his constitutional and statutory privilege against self-incrimination was violated by the Law Division's reliance on his silence at the scene of the accident. The panel noted that "[a]ny comment about a defendant's silence at or near the time of arrest should be approached with great caution." It held, however, that any error by the Law Division in that regard was harmless "because the record contains more than sufficient evidence to find beyond a reasonable doubt that defendant knew Putz was intoxicated and allowed him to operate the car defendant drove that evening." We granted defendant's petition for certification. *State v. Stas*, 208 *N.J.* 368, 29 *A.*3d 741 (2011).

### III.

Defendant argues that the Law Division should not have relied upon his silence at the scene of the accident as proof that he allowed an intoxicated driver to use his sister's vehicle, in violation of *N.J.S.A.* 39:4–50(a). He contends that the Appellate Division was wrong in concluding that any error arising from the Law Division's reliance on defendant's silence was harmless. Defendant argues that Putz's statement to police that he, not defendant, was the driver of the car was inadmissible as hearsay because the State presented no evidence to corroborate its reliability.

The State contends that this case is not an appropriate setting for a ruling by this Court on the issue of a defendant's silence, and that such a ruling is unnecessary in light of the other evidence that was before the Law Division.

### IV.

We review the factual findings of the Law Division and the municipal court under a deferential standard. The Court

considers "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." *State v. Locurto*, 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999) (quoting *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)). The Court owes " 'deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.' " *Ibid.* (quoting *Johnson, supra,* 42 *N.J.* at 161, 199 *A.*2d 809).[2] However, no such deference is owed to the Law Division or the municipal court with respect to legal determinations or conclusions reached on the basis of the facts. *See State v. Handy*, 206 *N.J.* 39, 45, 18 *A.*3d 179 (2011) (stating "appellate review of legal determinations is plenary"). Because defendant made no objection to the admission of the evidence of his silence before the Law Division, we review the Law Division's decision for plain error. *R.* 2:10–2.

The issue before the Court arises in the context of a prosecution for a DWI-related offense codified by the Legislature in *N.J.S.A.* 39:4–50(a). Stating its objective to "curb the senseless havoc and destruction caused by intoxicated drivers . . . [and] to eliminate intoxicated drivers from the roadways of this State," *State v. Hessen*, 145 *N.J.* 441, 457, 678 *A.*2d 1082 (1996) (quotation omitted), the Legislature codified separate violations for driving while intoxicated and allowing an intoxicated person to drive a vehicle within one's custody and control, sometimes called the "allowing" offense, *N.J.S.A.* 39:4–50(a).

*N.J.S.A.* 39:4–50(a) provides that a person who permits "another person who is under the influence of intoxicating liquor,

_____

2 Deference to factual findings and credibility determinations is "more compelling" where "two lower courts have entered concurrent judgments on purely factual issues. Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." *Locurto, supra,* 157 *N.J.* at 474, 724 *A.*2d 234; *see also State v. Oliver,* 320 *N.J.Super.* 405, 421, 727 *A.*2d 491 (App.Div.), *certif. denied,* 161 *N.J.* 332, 736 *A.*2d 525 (1999).

narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control," or permits "another to operate a motor vehicle with a blood alcohol concentration of 0.08% or more by weight of alcohol in the defendant's blood," is guilty of the "allowing" offense.[3] To convict a defendant of this offense, the State must demonstrate beyond a reasonable doubt that he or she had actual or constructive knowledge of the driver's intoxication, that he or she permitted the driver to operate the vehicle, and that the vehicle was under the defendant's custody or control. *State v. Skillman*, 226 *N.J.Super.* 193, 199–200, 543 *A.*2d 1016 (App.Div.1988); *N.J.S.A.* 39:4–50(a). Defendant's appeal in this case centers upon only one of the statutory elements, the requirement that the State prove that defendant allowed an intoxicated person to drive the vehicle.

## V.

The Law Division's reliance on defendant's silence in convicting him under *N.J.S.A.* 39:4–50 implicates his Fifth Amendment privilege against self-incrimination. It also invokes defendant's New Jersey state law statutory and common law privilege against self-incrimination, codified in *N.J.S.A.* 2A:84A–19 and *N.J.R.E.* 503.[4] Subject to waiver in certain circumstances, and with four exceptions that are irrelevant here, *N.J.S.A.* 2A:84A–19 and *N.J.R.E.* 503 provide that "every natural person has a right to refuse to

---

[3] Violation of the "allowing" provision of *N.J.S.A.* 39:4–50(a) may result in significant punishment, including a term of incarceration for a second offender. *N.J.S.A.* 39:4–50(a)(2). Noting that "[t]he person who allows an intoxicated person to drive may be as, or even more, culpable than the driver," this Court has held that a person accused of violating *N.J.S.A.* 39:4–50 by virtue of an "allowing" offense may not engage in plea bargaining. *Hessen, supra,* 145 *N.J.* at 458, 678 *A.*2d 1082.

[4] Although the privilege is not addressed in our State Constitution, it has long been the law of our state that "a suspect is under no duty to give a statement; on the contrary he is privileged to say nothing." *State v. Ripa,* 45 *N.J.* 199, 204, 212 *A.*2d 22 (1965) (citing *Escobedo v. Illinois,* 378 *U.S.* 478, 485, 84 *S.Ct.* 1758, 1762, 12 *L.Ed.*2d 977, 983 (1964)).

disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate."

The privilege against self-incrimination is also entrenched in our common law. Justice Brennan, when a member of this Court, explained its significance:

> In modern concept its wide acceptance and broad interpretation rest on the view that compelling a person to convict himself of crime is "contrary to the principles of a free government" and "abhorrent to the instincts of an American," that while such a coercive practice may suit the purposes of despotic power, ... it cannot abide the pure atmosphere of political liberty and personal freedom.
>
> [*In re Pillo,* 11 *N.J.* 8, 15–16, 93 *A.2d* 176 (1952) (citations omitted).]

*See also State v. Reed,* 133 *N.J.* 237, 250–52, 627 *A.2d* 630 (1993); *State v. Deatore,* 70 *N.J.* 100, 114–15, 358 *A.2d* 163 (1976).

The privilege against self-incrimination protects individuals who are tried for DWI-related offenses in quasi-criminal proceedings such as the municipal court trial at issue here. In *Berkemer v. McCarty,* the United States Supreme Court held that a "person subjected to custodial interrogation" after being stopped is entitled to the protection of *Miranda,* including the right to remain silent and the right to an attorney, "regardless of the nature or severity of the offense of which he is suspected or for which he was arrested." 468 *U.S.* 420, 434, 104 *S.Ct.* 3138, 3147, 82 *L.Ed.*2d 317, 331 (1984); *see also State v. Leavitt,* 107 *N.J.* 534, 538, 527 *A.*2d 403 (1987) (noting that since *Berkemer, Miranda* warnings have routinely been given in New Jersey before subjecting DWI suspects to custodial interrogation).[5] In other settings, Fifth Amendment rights against self-incrimination have been held to apply in quasi-criminal proceedings involving DWI. *See State v. Bohuk,* 269 *N.J.Super.* 581, 593, 636 *A.*2d 105 (App.Div.) (noting

---

[5] The United States Supreme Court declined to limit *Berkemer* to cases in which interrogation followed a formal arrest, holding that "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda." Berkemer, supra,* 468 *U.S.* at 440, 104 *S.Ct.* at 3150, 82 *L.Ed.*2d at 335.

that "[a]lthough there may be some confusion between a suspect's duty to undergo a breathalyzer test and his right to remain silent, we are convinced that a refusal to respond to even preliminary questions concerning a drunk driving charge should be regarded as an assertion of the Fifth Amendment privilege" (citation omitted)), *certif. denied,* 136 *N.J.* 29, 641 *A.*2d 1040, *cert. denied,* 513 *U.S.* 865, 115 *S.Ct.* 183, 130 *L.Ed.*2d 117 (1994).[6] The privilege against self-incrimination is thus available to a defendant accused of an "allowing" violation of *N.J.S.A.* 39:4-50. Accordingly, this case is governed by the decisions of the United States Supreme Court and this Court applying self-incrimination principles to settings involving a defendant's pre- and post-arrest silence.

Federal jurisprudence distinguishes between a defendant's silence prior to arrest, and his or her silence after arrest and the administration of *Miranda* warnings, and affords substantially greater protection in the latter setting. The leading case on post-arrest silence is *Doyle v. Ohio,* in which two defendants remained silent after being arrested and charged with selling marijuana to a police informant, but later contended that police officers framed them. 426 *U.S.* 610, 612-13, 96 *S.Ct.* 2240, 2242, 49 *L.Ed.*2d 91, 94-95 (1976). At their joint trial in a state court in Ohio, the prosecutor was permitted to impeach the defendants' testimony by questioning them about their failure to assert their police-framing defense at the time of their arrests, and their convictions were affirmed on appeal. *Id.* at 611-17, 96 *S.Ct.* at 2241-44, 49 *L.Ed.*2d at 94-96. The United States Supreme Court reversed, holding

---

[6] This Court has on several occasions held that due process protections apply to defendants in quasi-criminal proceedings. *See State v. Cummings,* 184 *N.J.* 84, 89, 875 *A.*2d 906 (2005) (holding that "quasi-criminal" breathalyzer refusal cases, like criminal cases, constitutionally require proof "beyond a reasonable doubt"); *State v. Garthe,* 145 *N.J.* 1, 8, 678 *A.*2d 153 (1996) (defendant in quasi-criminal municipal court proceeding is entitled to "adequate notice and opportunity to know the State's evidence and to present evidence in argument and response"). The federal Double Jeopardy Clause similarly protects defendants in quasi-criminal settings. *State v. Dively,* 92 *N.J.* 573, 585-86, 458 *A.*2d 502 (1983).

that "the use for impeachment purposes of petitioner's silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619, 96 *S.Ct.* at 2245, 49 *L.Ed.*2d at 98. Thus, the Supreme Court barred prosecutors from impeaching a defendant's credibility with his silence when that silence follows an arrest and the administration of *Miranda* warnings. *Ibid.*

In contrast, when the silence precedes the arrest and the administration of *Miranda* warnings, the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment do not bar the prosecution from using the silence to impeach the defendant's credibility at trial if he testifies. *Jenkins v. Anderson,* 447 *U.S.* 231, 238–41, 100 *S.Ct.* 2124, 2129–30, 65 *L.Ed.*2d 86, 94–96 (1980); *see also Smothers v. McCaughtry,* 418 *F.*3d 711, 714 (7th Cir.2005), *cert. denied,* 547 *U.S.* 1020, 126 *S.Ct.* 1582, 164 *L.Ed.*2d 301 (2006); *State v. Berube,* 256 *Conn.* 742, 775 *A.*2d 966, 974 (2001).

New Jersey law similarly focuses on the circumstances of the defendant's silence. However, in this Court's jurisprudence, the self-incrimination issue does not strictly turn on whether the silence preceded or followed the administration of *Miranda* warnings.

The Court first explored the issue of post-arrest silence in *Deatore, supra,* 70 *N.J.* at 113–19, 358 *A.*2d 163. There, one of two armed robbery defendants asserted at trial an alibi defense; he testified that at the time of the crime he had been at a motel with a woman, and offered her testimony in support of the alibi. *Id.* at 103–04, 358 *A.*2d 163. On cross-examination, the prosecutor asked "a series of questions bearing on [defendant's] failure to make any exculpatory statement to the police after he was arrested." *Id.* at 104, 358 *A.*2d 163. Chief Justice Hughes noted that "[t]here are many reasons why a person in such a situation may choose to say nothing," including reliance on the right to remain silent, concern about making any statement in police custody, or a lack of immediate recollection. *Id.* at 117, 358 *A.*2d 163. The Court held that "a defendant is under no obligation to volunteer to

the authorities at the first opportunity the exculpatory story he later tells at his trial and cannot be penalized directly or indirectly if he does not." *Id.* at 115, 358 *A.*2d 163.[7] Notwithstanding the factual context of *Deatore,* the Court did not strictly constrain its holding to that post-arrest setting; it held that a defendant's silence "at or near" the time of his arrest may not be used to impeach his credibility at trial. *Id.* at 108–09, 358 *A.*2d 163.

That principle was reiterated the following year in *State v. Lyle,* 73 *N.J.* 403, 375 *A.*2d 629 (1977). In *Lyle,* the defendant confessed to police at the crime scene that he had shot and killed a man who was romantically involved with the defendant's wife, but did not claim that the shooting was in self-defense. *Id.* at 405–06, 375 *A.*2d 629. Testifying at trial that he had killed the victim to defend himself from the victim's attack, the defendant was cross-examined about his failure to mention self-defense at the crime scene. *Id.* at 408 & n.5, 375 *A.*2d 629. The Court reversed defendant's conviction, holding that whether or not the defendant "knew or understood [his] *Miranda* rights," it was "manifestly improper" for the prosecution to use defendant's silence to attack the credibility of his self-defense theory. *Id.* at 410, 375 *A.*2d 629.

The Court confirmed the statutory and common law prohibition on the substantive use of a defendant's silence "at or near" the time of his arrest in *State v. Muhammad,* 182 *N.J.* 551, 567, 868 *A.*2d 302 (2005). There, a former police officer was accused by a woman of impersonating an officer, threatening to arrest her for prostitution and sexually assaulting her. *Id.* at 559, 868 *A.*2d 302. The victim insisted that the defendant escort her to the police station, where she accused him of rape, but defendant told police that he had brought her to the station because she was harassing his relatives. *Id.* at 559–61, 868 *A.*2d 302. A police officer told the defendant that he was not free to leave the police station, and

---

[7] Although the Court noted in *Deatore* that there was testimony indicating that "defendant was read his [*Miranda* ] rights," the Court's opinion does not indicate whether the defendant's silence preceded or followed the officer's administration of his *Miranda* rights. *See Deatore, supra,* 70 *N.J.* at 107, 358 *A.*2d 163.

that there would be an investigation. *Id.* at 561, 868 *A.*2d 302. After another officer interviewed the victim, defendant was arrested. *Ibid.* DNA evidence later confirmed a sexual encounter between defendant and the victim. *Ibid.*

At defendant's trial, in which he elected not to testify, defendant's counsel suggested that the victim was a prostitute and that their encounter had been consensual. *Id.* at 562, 868 *A.*2d 302. In his opening statement, his examinations of investigating officers, and in summation, the prosecutor repeatedly stressed that the defendant had not contended that the victim was a prostitute or asserted consent as a defense at any time during his stay at police headquarters. *Id.* at 562–64, 868 *A.*2d 302. The trial court denied a defense motion for a mistrial. *Id.* at 564, 868 *A.*2d 302. The Appellate Division reversed the defendant's conviction, and this Court affirmed. *Id.* at 564–65, 868 *A.*2d 302. The Court held that the defendant was silent during a period leading to his arrest, in which the police had "effectively placed [defendant] in custody," and that the silence consequently occurred "at or near" the time of his arrest. *Id.* at 572–73, 868 *A.*2d 302. It held that "[d]efendant was not obliged to give the police the exculpatory story his attorney presented at trial, and the State was not permitted to use his silence to convict him." *Id.* at 573, 868 *A.*2d 302.

The Court addressed a slightly different factual setting two years later in *State v. Elkwisni,* 190 *N.J.* 169, 172–74, 919 *A.*2d 122 (2007). In *Elkwisni,* one of two individuals apprehended at the scene of a convenience store robbery raised the defense of duress, for the first time, in his trial testimony. *Id.* at 172–75, 919 *A.*2d 122. He testified that his codefendant had forced him at gunpoint to participate in the robbery. *Id.* at 175, 919 *A.*2d 122. The prosecutor cross-examined the defendant about his failure to advise the police, at the scene of the robbery, that he was involved due to duress, and argued in summation that a reasonable person would have immediately explained to the police that he had been coerced. *Ibid.* This Court expressed "some reservation" about the prosecutor's cross-examination of the defendant regarding his

silence. *Id.* at 180, 919 *A.*2d 122. However, given the brevity of the prosecutor's improper questions, the Court held that the inquiry about the defendant's silence constituted harmless error. *Id.* at 181, 919 *A.*2d 122.

The Court's analysis of pre-arrest silence has consistently diverged from its treatment of silence "at or near" the time of arrest. *See id.* at 178, 919 *A.*2d 122. That distinction was illustrated in *State v. James Brown*, 118 *N.J.* 595, 610–14, 573 *A.*2d 886 (1990). In *James Brown*, two defendants racing on a highway were alleged to have killed a third driver. *Id.* at 600, 573 *A.*2d 886. One of the two was in the collision and remained at the scene. *Id.* at 602, 573 *A.*2d 886. The other driver, Ronald Emm, waited two days before admitting to the police that he had been involved, notwithstanding the fact that he reported the crash to police and returned to the accident scene in his capacity as a volunteer firefighter. *Id.* at 602–03, 573 *A.*2d 886. Counsel for Emm's codefendant, James Brown, impeached Emm's credibility by questioning him about his pre-arrest silence, and the Court held that the silence had significant probative value in the defendants' joint trial. *Id.* at 615, 573 *A.*2d 886. "[I]n general conformity with [the United States Supreme Court's holding in] *Jenkins*," the Court held that given the lack of compulsion on a defendant either to speak or not to speak prior to arrest, "evidence of pre-arrest silence, particularly in the absence of official interrogation, does not violate any right of the defendant involving self-incrimination." *Id.* at 613, 573 *A.*2d 886.[8]

On the same day that it decided *Elkwisni*, the Court again considered pre-arrest silence in *State v. Lawrence Brown*, 190 *N.J.* 144, 919 *A.*2d 107 (2007). In *Lawrence Brown*, the defendant

---

[8] The United States Supreme Court has held that in order to be admissible to impeach a defendant's credibility at trial, the silence must have some probative force, and that absent a threshold inconsistency between the defendant's pre-arrest silence and his or her exculpatory testimony at trial, "proof of silence lacks any significant probative value and must therefore be excluded." *United States v. Hale*, 422 *U.S.* 171, 176, 95 *S.Ct.* 2133, 2136, 45 *L.Ed.*2d 99, 104 (1975).

was accused of severing another man's ear with a broken beer bottle in an argument during a card game, leaving the victim disfigured. *Id.* at 148–49, 919 *A.*2d 107. The defendant then fled, and was not arrested for ten months. *Id.* at 148, 919 *A.*2d 107. At trial, the defendant pursued a self-defense theory, contending that the victim had threatened him with a knife. *Id.* at 150, 919 *A.*2d 107. Cross-examining the defendant, the prosecutor inquired about the defendant's failure to assert self-defense during the months in which he had evaded law enforcement while officials made public statements about the crime. *Id.* at 150–51, 919 *A.*2d 107. In summation, the prosecutor noted that the self-defense theory was first asserted a year and a half after the crime. *Id.* at 151, 919 *A.*2d 107. On appeal, this Court held that the prosecution's use of defendant's pre-arrest silence to impeach his credibility, in the absence of government compulsion, did not violate his privilege against self-incrimination:

[W]hen there is no governmental compulsion associated with defendant's pre-arrest conduct or silence, when the defendant testifies at trial, and when the objective circumstances demonstrate that a reasonable person in defendant's position would have acted differently, the State may attempt to impeach defendant on that pre-arrest conduct or silence. Further, when the circumstances warrant the admission of such evidence, the trial court should instruct the jury that the evidence of defendant's pre-arrest conduct or silence is admitted for the limited purpose of impeaching defendant's credibility and that it cannot be used as evidence of defendant's guilt.

[*Id.* at 158–59, 919 *A.*2d 107.]

Within these constraints, the Court stated it was not error for the trial court to permit the prosecution to use the defendant's pre-arrest silence to impeach his credibility on cross-examination. *Ibid.*

From this federal and state authority, we distill the principles that govern this case. Under federal law, the use for any purpose at trial of a defendant's silence after his arrest and the administration of *Miranda* warnings violates his or her privilege against self-incrimination and his or her right to due process. *Doyle, supra,* 426 *U.S.* at 617–19, 96 *S.Ct.* at 2244–45, 49 *L.Ed.*2d at 97–98. Under this Court's jurisprudence, even silence that precedes the administration of *Miranda* warnings—if it is "at or

near" the time of a defendant's arrest—cannot be used for any purpose at trial. *Elkwisni, supra*, 190 *N.J.* at 181, 919 *A.*2d 122; *Muhammad, supra*, 182 *N.J.* at 567–68, 868 *A.*2d 302; *Deatore, supra*, 70 *N.J.* at 108–09, 358 *A.*2d 163. However, our case law teaches that pre-arrest silence that is not "at or near" the time of arrest, when there is no government compulsion and the objective circumstances demonstrate that a reasonable person in a defendant's position would have acted differently, can be used to impeach that defendant's credibility with an appropriate limiting instruction. *Lawrence Brown, supra*, 190 *N.J.* at 158–59, 919 *A.*2d 107; *James Brown, supra*, 118 *N.J.* at 613–14, 573 *A.*2d 886. It cannot, however, be used as substantive evidence of a defendant's guilt. *Lawrence Brown, supra*, 190 *N.J.* at 158–59, 919 *A.*2d 107; *James Brown, supra*, 118 *N.J.* at 616, 573 *A.*2d 886.

■ Applied here, these principles compel the conclusion that the Law Division's use of defendant's silence, as substantive evidence of his guilt and for the purpose of assessing his credibility, violated his privilege against self-incrimination. At issue is defendant's silence in the midst of a police investigation. As Sergeant Vanderhook questioned and evaluated Putz, defendant stood near the accident scene with two officers. While the focus of the officers' interrogation was Putz, defendant was questioned about the fact that the minivan belonged to his sister. It is undisputed that until defendant was questioned and issued a summons, he was not free to leave the scene. Defendant's silence occurred "at or near" his receipt of a summons at the scene for a violation of *N.J.S.A.* 39:4–50, the functional equivalent of an arrest for purposes of this analysis. His silence thus should not have been used for any purpose—as substantive evidence of his guilt or in assessing his credibility—and the Law Division's reliance on that silence constituted error.

## VI.

■ In the absence of an objection by defendant before the Law Division, we review for plain error. *R.* 2:10–2. Under this standard, "an error is reversible if it was 'clearly capable of

producing an unjust result.'" *State v. Taffaro*, 195 *N.J.* 442, 454, 950 *A.*2d 860 (2008) (quoting *R.* 2:10–2).

█ We find that the Law Division's reliance on defendant's silence at the scene of the accident prejudiced a substantial constitutional right and was clearly capable of producing an unjust result. The Law Division could not convict defendant of the "allowing" offense under *N.J.S.A.* 39:4–50 unless it concluded beyond a reasonable doubt that Putz had been the driver, in contravention of both defendants' trial testimony. *N.J.S.A.* 39:4–50. The State's evidence on that issue, presented at the municipal court and relied upon in the de novo trial before the Law Division, consisted of two components: Putz's statement to police, recanted at trial, and defendant's silence as he observed the testing, interrogation and arrest of Putz. The Law Division prominently featured defendant's silence in its explanation of the basis for its decision, not only as it affected defendant's credibility but as substantive evidence of his guilt. Defendant's silence, improperly relied upon by the Law Division, cannot be isolated from the remaining evidence considered by the court. Because the improper evidence of silence was a significant factor in defendant's conviction, we reverse and remand to the municipal court for a new trial.[9] *See R.* 3:23–8 (reviewing court may remand to municipal court for new trial when "the rights of defendant were prejudiced below").

## VII.

The judgment of the Appellate Division is reversed, and the matter is remanded for a new trial.

---

[9] Defendant also challenged the admissibility of Putz's statements to police on the grounds that it violated *N.J.R.E.* 803(c)(25) and defendant's constitutional right to confrontation under *Bruton, supra,* 391 *U.S.* at 126, 88 *S.Ct.* at 1622, 20 *L.Ed.*2d at 479, notwithstanding his failure to object to the evidence at the municipal court trial or to move for a judgment of acquittal under *Rule* 3:18–1 at the close of the prosecution's case. In light of our determination that defendant is entitled to a new trial, we do not consider the admissibility of Putz's statement in the procedural setting of defendant's first trial.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, and HOENS join in JUSTICE PATTERSON's opinion. JUDGE WEFING, temporarily assigned, did not participate.

*For reversal and remandment*—Chief Justice RABNER, Justices LaVECCHIA, ALBIN, HOENS and PATTERSON—5.

*Not Participating*—Judge WEFING (temporarily assigned).

*Opposed*—None.