**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0812-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

OLEG SHTUTMAN,

    Defendant-Appellant.

_____

Argued January 24, 2017 — Decided April 19, 2017

Before Judges Leone and Vernoia.

On appeal from the Superior Court of New
Jersey, Law Division, Burlington County,
Municipal Appeal No. 11-15.

Leonard S. Baker argued the cause for
appellant (Greenblatt, Pierce, Engle, Funt &
Flores, LLC, attorneys; Mr. Baker, of counsel
and on the brief).

Jennifer B. Paszkiewicz, Assistant
Prosecutor, argued the cause for respondent
(Robert D. Bernardi, Burlington County
Prosecutor, attorney; Ms. Paszkiewicz, of
counsel and on the brief).

PER CURIAM

    Defendant Oleg Shtutman appeals from a September 24, 2015 Law

Division order, entered after a de novo hearing on a municipal

appeal, finding him guilty of disorderly conduct, <u>N.J.S.A.</u> 2C:33-2(a)(1). We affirm.

I.

Defendant was arrested and charged with disorderly conduct, <u>N.J.S.A.</u> 2C:33-2(a)(1). He pled not guilty and the matter was tried in the Evesham Township Municipal Court. The evidence the municipal court deemed credible showed that at around 6:00 p.m. on June 22, 2014, Howard Some went to defendant's home in search of Some's nine-year-old daughter's missing cell phone. Some did not know defendant, but traced the phone to the area of defendant's home with a mobile GPS tracking application.

Some first spoke with defendant's wife, who asked Some to leave the property. Some insisted the phone was located on defendant's property, and disregarded defendant's wife's request to leave. Defendant became involved, rejected Some's request to search the property, and told Some to leave.

Some left and called the police. Officers Christopher DeFrancesco and Bryan Strockbine responded to defendant's home. DeFrancesco spoke with defendant and detected an odor of alcohol, observed that defendant slurred his speech and, according to the officers, appeared to be intoxicated. Defendant appeared "agitated," and shouted "in a very loud voice" that their investigation was "a waste of taxpayers' money." Defendant

2

nevertheless permitted the officers to search the property surrounding defendant's home[1] but said Some was not permitted on the property. During this time, Some remained in the street in front of defendant's home.

Some's GPS application showed the phone was in defendant's front yard. The officers limited their search to that area but did not find the phone. During the officers' brief search, defendant yelled profanities and, as the search ended, moved toward the street where the officers were located. Some was nearby. Defendant was agitated and aggressive, yelling loudly, cursing, and said he hoped Some's "cock falls off," that Some should buy his daughter a new phone, and made sexually related comments concerning Some's daughter.

Strockbine asked defendant to calm down, but defendant refused, directing his conduct towards Strockbine and moving from his front yard toward the middle of the street where Strockbine stood. As defendant walked toward Strockbine he yelled "fuck you, you fucking asshole" and other profanities, and moved his arms up and down while pointing his raised middle fingers at Strockbine. Defendant continued to yell profanities and flail his arms as he

---

[1] The officers did not request a search of the interior of the home.

moved in Strockbine's direction, until he was within five inches of Strockbine's face.

During the episode, Strockbine "noticed that neighbors were coming out" of their houses and testified "it was obvious . . . [defendant] was causing a disturbance." He observed a neighbor on the other side of a lake walk out into her backyard, and other "people coming [from] both sides of [defendant's] house." Defendant was arrested and charged with disorderly conduct. N.J.S.A. 2C:33-2(a)(1).

The municipal judge found defendant guilty of disorderly conduct, concluding defendant's actions constituted "tumultuous behavior" that caused a "public inconvenience." The judge imposed a $500 fine and court costs.

Defendant appealed his conviction. The Law Division judge conducted a trial de novo and found defendant guilty of disorderly conduct under N.J.S.A. 2C:33-2(a)(1). The judge explained that regardless of whether defendant's conduct was "tumultuous" within the meaning of subsection (a)(1), it "certainly satisfied [] threatening" behavior under the same provision.

The trial judge found defendant "became and was extremely belligerent . . . towards the police officer at his residence in the front [yard], yelling foul language . . . [without] reason or justification except to cause annoyance and alarm." The judge

concluded that "when you put two fingers repeatedly in the face of a cop in an extremely aggressive manner," causing neighbors to come outside, "this is disorderly conduct . . . in the full sense of the word."

On appeal defendant raises the following arguments:

> I. THE [LAW DIVISION] ERRED WHEN IT FOUND [DEFENDANT] GUILTY BECAUSE THE STATE DID NOT PROVE BEYOND A REASONABLE DOUBT THAT HE VIOLATED [N.J.S.A. 2C:3-2(a)(1)].
>
>> A. THERE WAS NO PROOF THAT [DEFENDANT] CREATED A "PUBLIC INCONVENIENCE, ANNOYANCE, OR ALARM OR RECKLESSLY CREATED A RISK THEREOF."
>>
>> B. [DEFENDANT] DID NOT CREATE A RISK OF PUBLIC INCONVENIENCE, ANNOYANCE OR ALARM BY CREATING A HAZARDOUS OR PHYSICALLY DANGEROUS CONDITION.
>>
>> C. [DEFENDANT] DID NOT ENGAGE IN FIGHTING OR THREATENING OR IN VIOLENT OR TUMULTUOUS BEHAVIOR.

## II.

In our review of the Law Division's decision on a municipal appeal, "[w]e review the action of the Law Division, not the municipal court." State v. Robertson, 438 N.J. Super. 47, 64 (App. Div. 2014), certif. granted, 221 N.J. 287 (2015). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting State v. Locurto, 157 N.J.

463, 471 (1999)). "Unlike the Law Division, which conducts a trial de novo on the record, Rule 3:32-8(a), we do not independently assess the evidence." State v. Gibson, 429 N.J. Super. 456, 463 (App. Div. 2013) (quoting Locurto, supra, 157 N.J. at 471), rev'd on other grounds, 219 N.J. 227 (2014).

Although we defer to the trial judge's findings of fact, "no such deference is owed to the Law Division or the municipal court with respect to legal determinations or conclusions reached on the basis of the facts." Stas, supra, 212 N.J. at 49; see also State v. Handy, 206 N.J. 39, 45 (2011) (finding "appellate review of legal determinations is plenary").

Defendant was charged with violating N.J.S.A. 2C:33-2(a)(1).[2] The State was required to prove defendant, "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . [e]ngage[d] in fighting or threatening, or in violent or tumultuous behavior." N.J.S.A. 2C:33-2(a)(1)

_____

[2] The complaint alleged defendant created a hazardous or physically dangerous condition, which is proscribed under N.J.S.A. 2C:33-2(a)(2), but also detailed defendant's "belligerent" conduct and alleged only a violation of N.J.S.A. 2C:33-2(a)(1). The record shows the matter was prosecuted under N.J.S.A. 2C:33-2(a)(1), and both parties agree defendant was found guilty of violating that subsection in the municipal court and Law Division. We therefore find it unnecessary to address defendant's argument there was insufficient evidence that he created "a hazardous or physically dangerous condition" to support a conviction under N.J.S.A. 2C:33-2(a)(2).

(emphasis added). "Public" is not defined in subsection (a), but N.J.S.A. 2C:33—2(b) defines the term as follows: "affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, . . . or any neighborhood." Although "[i]t is not clear whether the Legislature intended [the subsection (b)] definition to apply to [the] use of the word 'public' in subsection [(a)], . . . for present purposes we assume a consistency of meaning." State v. Stampone, 341 N.J. Super. 247, 254 (App. Div. 2001).

Defendant argues his conviction should be reversed because he did not engage in fighting or threatening conduct, or violent or tumultuous behavior, as proscribed under N.J.S.A. 2C:33-2(a)(1). Defendant contends he merely used profane language and argued with police officers, and his conduct was insufficient to support his conviction. We disagree.

Defendant asserts the facts here are analogous to those in Stampone, where we reversed a conviction for disorderly conduct. Id. at 253-56. In Stampone, a police officer approached the defendant's parked vehicle and asked for defendant's name. Id. at 249-50. The defendant refused to provide his name, but later retrieved his license from the trunk of his car, returned to the driver's seat, and closed the door. Ibid. The officer attempted

to open the door and the defendant slammed it shut, nearly hitting the officer's legs. Ibid. The officer pulled the defendant out of the vehicle and the defendant cursed at the officer. Ibid.

We concluded the defendant's conduct did not constitute threats, violence, or otherwise tumultuous conduct, relying in part upon the dictionary definition of "tumult" which "speaks in terms of a disorderly and violent movement, agitation or milling about of a crowd, usually with great uproar and confusion of voices, a noisy and turbulent popular uprising, a riot." Id. at 254-55 (citing Webster's Third New International Dictionary 2462 (1993)). We further noted there was no evidence "that passers-by . . . notic[ed] any of [the defendant's actions] or congregat[ed] or, indeed, that such persons were even present," and concluded there was no capacity for the defendant's conduct to cause "public inconvenience, public annoyance or public harm" under the statute. Stampone, supra, 341 N.J. Super. at 255.

Stampone did not purport "to ascertain [tumult's] definitional parameters," but found it "sufficient to find that on the facts here presented there was no tumultuous conduct as a matter of law." Id. at 255. Here, we must examine the definitions further. When N.J.S.A. 2C:33-2 was enacted in 1978, "tumultuous" was defined "as marked by tumult," "tending or disposed to cause or excite a tumult," and "marked by violent or overwhelming

turbulence or upheaval." Webster's New Collegiate Dictionary 1258 (1977). In turn, "tumult" was defined to include not only the crowd-focused definitions cited in Stampone but also "violent agitation of mind or feelings" and "a violent outburst." Ibid.; see also United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J. Super. 1, 67 (App. Div.) (noting that "[t]umult is defined as either 'uproar' or 'violent agitation of mind of feelings,'" and that "[e]xcessive noise could qualify as an uproar or a violent agitation") (quoting Webster's New American Dictionary 555 (Smithmark 1995))), certif. denied, 170 N.J. 390 (2001).

We are satisfied the circumstances supporting our decision in Stampone are distinguishable. In Stampone, we were convinced the defendant's actions in slamming the car door and refusing to provide his name to the officer did not rise to the level of tumultuous conduct under N.J.S.A. 2C:33-2(a)(1). Id. at 249-50, 254-55. Here, defendant appeared intoxicated, acted in an agitated and aggressive manner, and engaged in a loud and profane-ridden tirade that lasted for minutes, and which was accompanied by the continuous flailing of his arms as he walked directly toward Strockbine until he was within inches of Strockbine's face. Defendant engaged in such conduct despite the officers' requests that he calm down, and he created what his wife described as "total chaos" in the street in front of their home. Under the totality

of the circumstances presented, we are persuaded defendant's conduct constituted "a violent outburst," Webster's New Collegiate Dictionary, supra, at 1258, and exhibited a "violent agitation of mind or feelings" creating "tumult," United Prop. Owners Ass'n of Belmar, supra, 343 N.J. Super. at 67 (citation and internal quotation marks omitted), and therefore constituted tumultuous conduct under N.J.S.A. 2C:33-1(a)(1).

In Stampone, we also determined defendant's conduct had no capacity to cause public inconvenience, annoyance, or harm because "[t]here was no indication that passers-by were noticing any of [the defendant's actions] or congregating or, indeed, that such persons were even present." Stampone, supra, 341 N.J. Super. at 255. Here, however, defendant engaged in the conduct in the yard and street in front of his home in a residential neighborhood, which is a public place. N.J.S.A. 2C:33-2(b); Stampone, supra, 341 N.J. Super. at 254. The evidence showed there were members of the public present during defendant's commission of the offense. Some was in the street in front of defendant's home, defendant's neighbor across the lake emerged into her backyard, and people came from both sides of defendant's home toward the "total chaos" defendant's conduct created. Thus, unlike Stampone, it was a reasonable inference that defendant's conduct in fact caused "public inconvenience, annoyance or alarm." N.J.S.A. 2C:33-2(a).

In Stampone, we further determined that the evidence failed to demonstrate the defendant acted purposely or recklessly. Stampone, supra, 341 N.J. Super. at 255. N.J.S.A. 2C:33-2(a) does not require that a defendant actually "cause public inconvenience, annoyance or alarm," but only that defendant acted "with [the] purpose to cause" it or "recklessly creat[ed] a risk thereof." Ibid.

A person acts purposely "if it is his conscious object to engage in conduct of that nature or to cause such a result." N.J.S.A. 2C:2-2(b)(1). Reckless conduct requires a showing that a person

> consciously disregard[ed] a substantial and unjustifiable risk that the material element [of an offense] exist[ed] or [would] result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involve[d] a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.
>
> [N.J.S.A. 2C:2-2(b)(3).]

The evidence showed defendant knew he was in a public place, the yard and street in front of his home. He disregarded the officers' requests to calm down and his conduct ended only when he was placed under arrest. Defendant disregarded a substantial risk that his conduct would cause public inconvenience or alarm

11

to Some who stood as a member of the public in the street, his neighbors, and the individuals who came from both sides of his home to the chaos he created in front of it. We are therefore satisfied the evidence supports the court's determination defendant acted with purpose to cause public inconvenience, annoyance or alarm, or recklessly created a risk of causing it. N.J.S.A. 2C:33-2(a).

Contrary to defendant's assertions, his conduct is wholly dissimilar to the defendant's actions we found insufficient in Stampone. The evidence supports the court's determination that defendant committed the offense of disorderly conduct in violation of N.J.S.A. 2C:33-2(a)(1).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0812-15T2