**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5702-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SEA SHELL RESORT AND
BEACH CLUB,

     Defendant-Appellant.

_____

Argued May 16, 2019 – Decided May 30, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Municipal Appeal No. 17-28.

Joseph Anthony Martin argued the cause for appellant (Martin Law Firm, LLC, attorneys; Joseph Anthony Martin, on the brief).

Micci J. Weiss argued the cause for respondent (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Bruce William Padula and Micci J. Weiss, on the brief).

PER CURIAM

Defendant Sea Shell Resort and Beach Club appeals from the June 26, 2018 Law Division order denying its appeal from the municipal court's denial of its motion to dismiss complaints alleging violations of the Borough of Beach Haven's sign ordinance. On appeal, defendant contends the Law Division judge erred in finding the sign ordinance applied to the two light-emitting diode (LED) panels defendant installed on its building and the Borough did not selectively enforce the sign ordinance against defendant. Defendant also contends the judge erred in denying discovery. We reject these contentions and affirm.

I.

The Borough's sign ordinance provides, in pertinent part, that "[n]o signs, billboards, advertising structures or similar items are permitted except as" set forth in the ordinance. Beach Haven, N.J., Ordinances, Zoning-Signs, Ordinance § 212-16A (1979). Ordinance §121-16B provides, in pertinent part:

B. Signs in the RC [Multifamily Residential] District:

. . . .

(3) One lighted sign not to exceed [thirty-five] square feet in area for each motel or hotel is permitted. Such sign shall be attached to the building, but, if erected on or above the roof of the building, such sign shall be set back a minimum distance of five feet from the property line. Flashing signs are not permitted. . . .

A-5702-17T4

(4) No sign authorized herein shall be erected without first obtaining a permit therefor from the Building Administrator, who shall issue the same upon being satisfied that such sign will not violate this chapter and upon payment to him of the appropriate review fee; provided, however, that this subsection shall not apply to those signs allowed by [Ordinance § 212-16A(4)].[1]

Ordinance § 212-16D provides, in pertinent part:

D.  Prohibited features.

. . . .

(2) No neon sign or similar illuminated advertisements shall be of such color or located in such a fashion as to diminish or detract in any way from the effectiveness of any traffic signal or similar safety or warning device.

. . . .

(4) No sign shall have flashing lights or exposed high-intensity illumination.

Ordinance § 212E provides:

E.  Permit fee.  No sign shall be erected pursuant to the terms of this section before paying a zoning fee of $25 to the Borough of Beach Haven.
[Added 2-9-2009 by Ord. No. 2009-6].
(1) No sign board shall be displayed before paying a zoning fee of $50 annually, to coincide with mercantile license renewals, to the Borough of Beach Haven. . . .

---

[1]  Ordinance § 212-16A(4) does not apply here.

A-5702-17T4

Beach Haven, N.J., Ordinances, Zoning-Definitions and Word Usage, § 212-3 defines "sign," in pertinent part, as "[a]ny device designated to inform or attract the attention of persons not on the premises on which the sign is located[.]"

Defendant is a family-owned and operated beach resort and facility located on Atlantic Avenue in the Borough's RC district. Superstorm Sandy destroyed the property. As part of rebuilding, defendant installed two LED panels on the exterior of the building, one located on the southwest corner of the building and the other on the northwest corner. Defendant referred to the LED panels as low density LED informational panels. Defendant also installed nine other lighted signs on the building.

Defendant claimed that prior to purchasing and installing the LED panels, its owner, Thomas Hughes, spoke to Borough zoning officer William Greer, who confirmed the LED panels would be permissible and "would not be a problem[.]" Defendant further alleged that it purchased and installed the LED panels, at a cost of more than $20,000, in reliance on Greer's representation.

Greer certified he never spoke to Hughes prior to defendant installing the LED panels; Hughes never consulted with or advised him of his plan to install LED panels; and Greer did not confirm the LED panels would be permissible.

Greer also certified he did not become aware defendant had installed the LED panels until he received the first of twenty-one complaints from adjacent residents on June 9, 2017. The residents complained about the deleterious effect of the brightly lit LED panels on the value and enjoyment of their properties and on the nature of the historic district in which the properties were located. One resident complained that the lighted LED panels changed colors and messages repeatedly, often announcing the availability of beer and happy hour specials in the resort. A picture of the LED panel on the front of the resort advertised: "Raw Bar Happy Hour Open Daily."

On June 9, 2017 and June 12, 2017, Greer issued the following complaints against defendant:

1. Complaint No. 1503-SC-000066: failure to obtain a sign permit in violation of Ordinance § 212-16B(4);

2. Complaint No. 1503-SC-000067 and Complaint No. 1503-SC-000070: installing more than one lighted sign in violation of Ordinance § 212-16B(3); and

3. Complaint No. 1503-SC-00069: failure to pay a sign permit fee in violation of Ordinance § 212-16E.

On June 28, 2017 defendant applied for a sign permit for the LED panels. On July 5, 2017, Greer denied the application, finding the LED panels violated

the sign ordinance. Thereafter, Greer issued Complaint No. 1503-SC-011161: installing more than one lighted sign in violation of Ordinance § 212-16B(3).[2]

On July 31, 2017, defendant filed a motion in the municipal court to dismiss the complaints, arguing the sign ordinance did not apply to its LED informational panels. Defendant posited that LED panels did not exist when the Borough passed the sign ordinance in 1979, and thus, the Borough could not have contemplated or intended to regulate LED panels at the time.

Defendant also argued the sign ordinance clearly and unambiguously prohibited only neon, flashing, and exposed high-intensity illumination signs, the LED panels did not fall within these categories, and the sign ordinance did not specifically include or prohibit LED panels. Defendant further argued that reference to "lighted signs" in Ordinance § 212-16B(3) suggested the sign ordinance was written for traditional wood signs or banners that are backlighted or illuminated with directional lighting, and the LED panels do not fit within this category of "signs." Defendant concluded that because the sign ordinance, on its face, did not apply to or regulate the LED panels, defendant was not

---

[2] Greer issued other complaints that the municipal court dismissed and are not pertinent to this appeal.

required to obtain a sign permit and pay a sign permit fee and did not violate the sign ordinance.

Defendant also argued the Borough selectively enforced the sign ordinance against it, but not against two businesses in the Borough, Bay Village and the Volunteer Fire Department (VFD), who defendant claimed installed and were using similar LED panels without applying for or receiving a sign permit. However, Greer certified that the two businesses had applied for and obtained sign permits, and submitted documents showing they did so in 2006 and 2014, respectively. Defendant raised no other argument regarding selective enforcement.

In opposition, the State argued the sign ordinance regulates all signs and a LED panel is a "sign," as defined in Ordinance § 212-3 because it is a device designated to inform or attract the attention of persons not on the premises on which the sign is located. The State also argued that defendant never obtained a sign permit or paid a sign permit fee and installed more than one lighted sign. The State denied it had selectively enforced the sign ordinance against defendant, noting that Bay Village and the VFD had applied for and received permits for their LED panels and each installed only one LED panel on their building.

In reply, defendant reiterated its arguments and added that the State should be compelled to provide discovery requested on July 5, 2017, including a proposed amendment to the sign and nuisance ordinances to include LED panels, and the court should dismiss the complaints if the State failed to comply.

On September 25, 2017, municipal court Judge Stacey Kerr denied defendant's motion, finding Ordinance § 212-3 and Ordinance § 212-16 clearly encompassed defendant's LED informational panels. The judge determined the LED panels are "signs" within the meaning of Ordinance § 212-3, as they are devices designated to inform and attract attention. The judge also found defendant did not apply for a sign permit or pay the sign permit fee and had installed two LED panels and other lighted signs on the property. The judge also held there was no selective enforcement of the sign ordinance, as Bay Village and the VFD had applied for and obtained permits, the two businesses were located in a different zone, and the Borough had not received complaints about their LED panels.

Following Judge Kerr's decision, defendant sought to compel the State to comply with its July 5, 2017 and September 21, 2017 discovery requests. Judge Kerr denied defendant's request, holding as follows:

> I found that the [sign] ordinance applies to the sign. So the fact that that's happened . . . I don't find that any of

these things are relevant. Again, I don't find selective enforcement. I don't think there's a difference between LED applications and sign applications. I'm not sure how that's relevant to whether [defendant] has violated the [sign] ordinance as it was written.

Defendant then pled guilty to all five complaints preserving its right to appeal Judge Kerr's rulings. The judge imposed an $830 fine and $165 for court costs. Defendant agreed to cease using the LED panels pending appeal.

On appeal to the Law Division, defendant reiterated the arguments made to Judge Kerr. For the first time on appeal, defendant argued that the Mayor's personal animus toward defendant and its owner, and the fact that the Borough issued sign permits to Bay Village and the VFD but not defendant, was further evidence of selective enforcement.

Judge Michael T. Collins denied defendant's appeal. The judge found the definition of "sign" was clear and unambiguous and the sign ordinance governed the LED panels. The judge stated:

> I find it significant in part the arguments made by the State[] . . . with respect to the fact that as long ago as 2006, that Bay Village had applied for and been granted a permit for the LED [panel]. That leads me to believe that this [is] not something that is a recent vintage and/or was the product of some type of selective enforcement whereby Bay Village and/or the [VFD] were the beneficiaries of an indulgent Borough where [defendant] was not. So in this regard with respect to whether or not I find that the LED panels are

9

governed by the Borough ordinance, I find that the answer to that is yes.

Judge Collins rejected defendant's selective enforcement argument, finding as follows:

> [As] to the other issue which is that of selective enforcement, as pointed out by the State, the burden of proof there is fairly high, at least at the threshold level. And the question is whether or not the scenario presented with respect to Bay Village and the [VFD] constitutes favorable treatment to those entities and to the disadvantage of [defendant], and I do not find that there has been a colorable claim articulated by the defendant. As pointed out earlier, counsel told me this 2006 for Bay Village and I guess 2014 for the [VFD]. So not only was there that type of vintage of age that is attributed to the Borough's position with respect to LED [panels], but the fact that I just don't find any selective enforcement having been borne out under these circumstances.

Judge Collins declined to consider defendant's animus argument, as defendant did not raise this argument before Judge Kerr.[3] This appeal followed.

---

[3] Judge Collins properly declined to address this issue, as his review was limited to the record below and there was no legal error that permitted him to supplement the record. R. 3:23-8(a)(2); see also State v. Loce, 267 N.J. Super. 102, 104 (Law Div. 1991), aff'd o.b., 267 N.J. Super. 10 (App. Div. 1993) (the Law Division is bound by the evidentiary record of the municipal court).

II.

On appeal, defendant first contends that Judge Collins erred in finding the sign ordinance applied to LED panels. Defendant reiterates the arguments made to Judge Collins as to why the sign ordinance, on its face, does not apply to LED panels, and also argues the judge erred in failing or refusing to consider extrinsic evidence that would have shown the sign ordinance did not apply to LED panels.

On appeal from a municipal court to the Law Division, the review is de novo on the record. R. 3:23-8(a). "At a trial de novo, the court makes its own findings of fact and conclusions of law but defers to the municipal court's credibility findings." State v. Robertson, 228 N.J. 138, 147 (2017).

In our review of the Law Division's decision on a municipal appeal, "[w]e 'consider only the action of the Law Division and not that of the municipal court.'" State v. Adubato, 420 N.J. Super. 167, 175-76 (App. Div. 2011) (quoting State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001)). We consider "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record." State v. Stas, 212 N.J. 37, 49 (2012) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Unlike the Law Division, we do not independently assess the evidence. Locurto, 157 N.J. at 471. The rule of deference is more compelling where, such

11

as here, the municipal and Law Division judges made concurrent findings. Id. at 474. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility determinations made by two lower courts absent a very obvious and exceptional showing of error." Ibid. "Therefore, appellate review of the factual and credibility findings of the municipal court and the Law Division 'is exceedingly narrow.'" State v. Reece, 222 N.J. 154, 167 (2015) (quoting Locurto, 157 N.J. at 470).

However, we afford no special deference to a trial court's interpretation of the law and the legal consequences that flow from established facts. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Because Judge Collins's judgment as to the applicability of the sign ordinance to LED panels rested on his statutory interpretation, our scope of review is de novo, without affording such judgment any special deference. State ex rel. K.O., 217 N.J. 83, 91 (2014). Applying the above standards, we discern no reason the reverse.

"The established rules of statutory construction govern the interpretation of a municipal ordinance." Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999). As our Supreme Court has held:

> When interpreting a statute, our main objective is to
> further the Legislature's intent. To discern the

12

Legislature's intent, courts first turn to the plain language of the statute in question. In reading the language used by the Legislature, the court will give words their ordinary meaning absent any direction from the Legislature to the contrary. "If the plain language leads to a clear and unambiguous result, then [the] interpretative process is over."

Where the plain meaning does not point the court to a "clear and unambiguous result," it then considers extrinsic evidence from which it hopes to glean the Legislature's intent. Included within the extrinsic evidence rubric are legislative history and statutory context, which may shed light on the drafter's motives. Likewise, interpretations of the statute and cognate enactments by agencies empowered to enforce them are given substantial deference in the context of statutory interpretation.

[TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533, 540-41 (2010) (alteration in original) (citations omitted) (first quoting Richardson v. Bd. of Trs., Police & Fireman's Ret. Sys., 192 N.J. 189, 195 (2007); and then quoting Bedford v. Riello, 195 N.J. 210, 222 (2008)).]

Courts "will only resort to extrinsic aids . . . if the plain language of the statute yields 'more than one plausible interpretation.'" State v. Williams, 218 N.J. 576, 586 (2014) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

In considering a statute's language, we are guided by the legislative directive that:

[W]ords and phrases shall be read and construed with their context, and shall, unless inconsistent with the

13

manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language. Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning.

[N.J.S.A. 1:1-1.]

It has been long held that when construing a statute in which "the Legislature has clearly defined a term, the courts are bound by that definition." Febbi v. Bd. of Review, Div. of Emp't Sec., Dep't of Labor & Indus., 35 N.J. 601, 606 (1961).

There was no need for extrinsic evidence in this case. The plain language of Ordinance § 212-16 leads to a clear and unambiguous result that, except for one lighted sign, the Borough intended to prohibit all "signs, billboards, advertising structures or similar items" in the RC district.

The plain language of Ordinance § 212-3 leads to the clear and unambiguous result that LED panels are "signs." The ordinance defines "sign" as "[a]ny device designated to inform or attract the attention of persons not on the premises on which the sign is located[.]" Although the ordinance does not define the word "device," that word is commonly defined as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Merriam-Webster Online Dictionary, "device,"

http://www.merriam-webster.com/dictionary/device. The LED panels clearly are devices designed to inform or attract attention of persons not on defendant's premises. In fact, defendant referred to the LED panels as "LED informational panels," and there is no dispute that the LED panels displayed information to the public, such as the availability of beer and happy hour specials within the resort. (Emphasis added). Accordingly, the LED panels are "signs" within the meaning of Ordinance § 212-3.

Lastly, we reject defendant's argument that the LED panels are not "lighted signs" and that "lighted signs" means only traditional wood signs or banners that are backlighted or illuminated with directional lighting. LED means "light-emitting diode," and the term "LED" is commonly defined as "a semiconductor diode that emits light when a voltage is applied to it and that is used in electronic devices[.]" Merriam-Webster Online Dictionary, "LED," http://www.merriam-webster.com/dictionary/LED. Accordingly, the LED panels are "lighted signs" governed by Ordinance § 212-16B(3).

We conclude the LED panels are signs governed by the sign ordinance. The fact that Bay Village and the VFD applied for an obtained a sign permit for their LED panels in 2006 and 2014, respectively, supports this conclusion. Defendant violated the sign ordinance by installing the LED panels on its

15

building without obtaining a sign permit (Ordinance § 212-16B(4)); without paying the sign permit fee (Ordinance § 212-16(E)); and installing more than one lighted sign (Ordinance § 212-16B(3)). Discovery and any ordinance amendments will not change this result.

### III.

Defendant next argues that Judge Collins erred in finding, as a matter of law and without the benefit of discovery and a factual record, that the Borough did not selectively enforce the sign ordinance against defendant. Our review of this issue is limited to whether the judge's findings "could reasonably have been reached on sufficient credible evidence present in the record." Stas, 212 N.J. at 49. Defendant also argues the judge erred in denying discovery on the selective enforcement issue.

As an initial matter, defendant is incorrect that selective enforcement would render the Borough's action arbitrary, capricious or unreasonable, thus warranting reversal. Rather, the selective enforcement of ordinances, like statutes, is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. U.S. Const. amend. XIV, § 1; see Whren v. United States, 517 U.S. 806, 813 (1996) (explaining that the Equal

Protection Clause "prohibits selective enforcement of the law based on considerations such as race").

"Discriminatory enforcement of an otherwise impartial law by state and local officials is unconstitutional." Pennsauken, 160 N.J. at 183. However, "[t]he conscious exercise of some selectivity in enforcement is not a constitutional violation unless the decision to prosecute is based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Ibid.

A party asserting selective enforcement has a "heavy" burden of proof. State v. Di Frisco, 118 N.J. 253, 266 (1990). As our Supreme Court has held:

> In order to prevail on a claim of discriminatory enforcement, the defendant must plead and prove intentional selectivity as well as an unjustifiable basis for the discrimination. "[The] standards require [the defendant] to show both that the . . . enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose."
>
> [Ibid. (first alteration in original) (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)).]

"[A] defendant establishes his right to discovery if he can show that he has a 'colorable basis' for a selective prosecution claim." State v. Kennedy, 247 N.J. Super. 21, 31 (App. Div. 1991). "A more lenient standard would encourage the assertion of spurious claims of selective enforcement as a means of

17

burdening criminal trials with massive discovery of material completely irrelevant to the defendant's case." Id. at 32. "[A] defendant must also establish that the materials he seeks are in some way probative of the elements of selective enforcement." Id. at 34-35.

Defendant failed to demonstrate that the Borough selectively enforced the sign ordinance against it. Defendant did not claim the Borough's enforcement of the sign ordinance against defendant was based on an unjustifiable standard such as race, religion, or other arbitrary classification. Rather, defendant grounded its selective enforcement argument on its mistaken belief that Bay Village and the VFD did not apply for and obtain a sign permit for their LED panels. When that argument failed, defendant then grounded its selective enforcement on the Borough issuing sign permits to these two businesses, but not to defendant. Neither of these grounds proves the Borough's enforcement of the sign ordinance against defendant was based on an unjustifiable standard, had a discriminatory effect, and was motivated by a discriminatory purpose, let alone make a "colorable claim" of selective enforcement which would have entitled it to discovery. For this reason, defendant's selective enforcement argument fails.

In any event, defendant ignores the clear distinction between it and Bay Village and the VFD. Both businesses applied for and received sign permits prior to installing their LED signs, whereas defendant did not apply for a sign permit or pay the sign permit fee prior to installing its LED panels. Both businesses installed one LED panel, whereas defendant installed two LED panels. Both businesses are located in the business district that did not abut residential neighborhoods, whereas defendant's resort is located in the RC multifamily residential district. In addition, residents had complained about defendant's LED panels, whereas there were no complaints against Bay Village or the VFD. Thus, to the extent the Borough treated defendant different than Bay Village or the VFD, that disparate treatment was entirely justifiable, as the Borough based its actions on defendant's violation of the sign ordinance and the numerous residents' complaints about the LED panels. Simply put, defendant failed meet its "heavy" burden to establish a colorable claim of selective enforcement, and thus, was not entitled to discovery.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5702-17T4