**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4250-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ROSENDO S. GOMEZ-SERPAS,
a/k/a SALOMON GOMEZSERPAS,
SALOMON GOMEZ, SALOMON
SERPAS, SALOMON GOMEZ-SEEPAS,
SALOMON G. SERPAS, and
SALOMON G. SEEPAS,

     Defendant-Appellant.

_____

Submitted January 22, 2020 – Decided February 26, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 16-08-0548.

Joseph E. Krakora, Public Defender, attorney for appellant (Jaime Beth Herrera, Assistant Deputy Public Defender, of counsel and on the brief).

Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney for respondent (Timothy Mark Ortolani,

Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Tried before a jury, defendant Rosendo S. Gomez-Serpas appeals, following his conviction and sentencing for first-degree murder, contrary to N.J.S.A. 2C:11-3(a)(1) and (2); fourth-degree unlawful possession of a knife, contrary to N.J.S.A. 2C:39-5(d); and third-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4(d). We affirm.

I.

The following evidence was introduced at trial. At around 3:00 a.m. on April 9, 2016, defendant went to Imperial Latino, a bar in Elizabeth, to pick up his girlfriend, Dinora Rodriguez (Rodriguez), who was finishing her shift as a waitress, despite having to wake up for work at 7:00 a.m. At some point that night, Rodriguez served Mario Ortiz (Ortiz) drinks and promised to leave with him, though she did not intend to do so. Rodriguez did this in accordance with the bar's business scheme of inducing customers to stay and buy drinks for as long as possible, including falsely leading them on. Ortiz and Rodriguez met at

2

her previous job at a bar called Kucaramakara,[1] and he saw her once before at Imperial Latino.

At the end of her shift, Rodriguez exited the bar to meet defendant in the parking lot. She exited the bar with a co-worker, Gloria Rivera (Rivera), through the vestibule area. Ortiz questioned her about leaving without him, grabbed her by the arm, and was "pulling her to take her with him." Ortiz told Rodriguez she was "going home with him." Defendant, who was standing beside Rodriguez, confronted Ortiz about grabbing Rodriguez, and informed Ortiz that she was his girlfriend and he came to take her home.

Thereafter, an altercation ensued between defendant and Ortiz. Defendant and Rodriguez testified that during a verbal conflict, Ortiz became physical, whipping defendant on his back with his belt, and threatening defendant. They testified that defendant and Ortiz pushed each other, though the confrontation was not captured on the video footage from the bar. However, another surveillance video showed defendant walking away from Ortiz and toward the passenger side of his vehicle to retrieve a knife.

---

[1] The correct spelling of the bar is Kucaramakara. It is incorrectly spelled as Cucaramacara in the record.

A-4250-17T1

Defendant re-engaged with Ortiz, this time with the knife. Rodriguez and Rivera stood between the two men and tried to stop their fighting, without success. While defendant and Ortiz pushed and punched each other, and as Ortiz continued to strike defendant with his belt, defendant lunged at Ortiz with the knife twice, the second time plunging it into Ortiz's chest, which killed him seconds later.

Defendant testified that he did not see Ortiz fall at the time he stabbed him and left the scene with his girlfriend. As defendant and Rodriguez got into defendant's car, an unidentified male attempted to drag Ortiz's body out of the way of cars in the parking lot. The man swung at defendant's car as it departed with a belt wrapped around his hand, causing a crack in the back window. Rodriguez testified that she and defendant drove straight home.

Ortiz was pronounced dead at 5:00 a.m. When Detective Brendan Sullivan of the Homicide Task Force arrived at the scene, he asked the owner of the bar to view any video footage that captured the incident. He was informed a surveillance system was in place, but the camera over the front door where the altercation initiated was not working at the time. Approximately ten hours later, defendant was arrested at his home, while sleeping in his bed.

4

On August 5, 2016, defendant was indicted for first-degree murder (count one); kidnapping, N.J.S.A. 2C:13-1(b)(1) (count two); and the weapons charges (counts three and four). Count two was dismissed prior to trial.

At trial, defendant contended that Ortiz was the aggressor who grabbed his girlfriend and wanted to fight. Defendant testified Ortiz "came charging" at him, threw punches, and that defendant acted in self-defense. On February 8, 2018, a jury found defendant guilty of first-degree murder and the weapons charges.

On March 23, 2018, defendant was sentenced to fifty-two years imprisonment on the murder charge (count one), subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; eighteen months imprisonment on the unlawful possession of a weapon charge (count three), to run concurrently with the sentence imposed on count one; and four years imprisonment on the possession of a weapon for an unlawful purpose charge (count four), also to run concurrently with the sentence imposed on count one.

Defendant's counsel presents the following claims on appeal:

> POINT I
>
> THE JURY INSTRUCTION ON PASSION/PROVOCATION MANSLAUGHTER IMPROPERLY FAILED TO ADDRESS MUTUAL

COMBAT AS A SOURCE OF ADEQUATE PROVOCATION. (Not Raised Below).

POINT II

IMPROPER COMMENTS MADE BY THE PROSECUTOR THROUGHOUT THE TRIAL EXCEEDED THE BOUNDS OF PROPRIETY BY PREJUDICING THE JURY, THEREBY DEPRIVING DEFENDANT OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL. (Partially Raised Below).

A. The Prosecutor's Opening and Closing Statements and References to What the State "Knows" and "Contends" Exceeded the Bounds of Propriety by Implying the Prosecutor Had Information That Jurors Did Not, and That Jurors Should Rely on in Their Deliberations.

B. The Prosecutor's Juxtaposition of Ortiz as the Innocent Victim with no Criminal Record and Gomez-Serpas as the Hardened Criminal Sitting in Jail was Improper and Prejudiced the Defendant Such That He Was Denied a Fair Trial.

C. The Prosecutor's Comments on Defendant's Silence and his Decision Not to Remain at the Scene and Provide a Statement to Police Violated His Constitutional Rights.

D. The Prosecutor's Comment That the Absence of Video Footage in the Vestibule Meant Gomez-Serpas Was Probably Lying Was Improper and Deprived Defendant of a Fair Trial.

A-4250-17T1

POINT III

GOMEZ-SERPAS'S SENTENCE OF [FIFTY-TWO] YEARS IS EXCESSIVE, UNDULY PUNITIVE, AND MUST BE REDUCED BECAUSE THIS WAS THE [TWENTY-THREE]-YEAR-OLD DEFENDANT'S FIRST CONVICTION AND THE CIRCUMSTANCES WERE UNLIKELY TO RECUR.

In his supplemental pro se brief, defendant contends:

POINT I

THE TRIAL COURT SHOULD HAVE SUA SPONTE INCLUDED SELF-DEFENSE AS AN AFFIRMATIVE DEFENSE WHEN DEFENSE ATTORNEY LISTED ALTERNATIVE LESSER-INCLUDED OFFENSES TO THE JURY; ALTERNATIVELY, THE TRIAL COURT ERRED WHEN IT DID NOT SUA SPONTE CHARGE THE JURY WITH SELF-DEFENSE BECAUSE THERE WAS MORE THAN AMPLE EVIDENCE TO SUPPORT THAT DEFENSE AT THE CONCLUSION OF TRIAL.

A.     N.J.S.A. 2C:3-4.  Use of force in self-protection.

B.     N.J.S.A. 2C:3-5.  Use of force for the protection of other persons.

POINT II

THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A MURDER CONVICTION BECAUSE MURDER IS REDUCED TO MANSLAUGHTER WHEN IT IS COMMITED IN THE HEAT OF PASSION, N.J.S.A. 2C:11-4(b)(2).

7

A.   Dinora Rodriguez's testimony.

B.   Gloria Rivera's testimony.

C.   The video footage.

II.

Defendant argues for the first time on appeal that the jury instruction the trial court gave on passion/provocation manslaughter failed to address mutual combat as a source of adequate provocation.  The trial court instructed the jury on passion/provocation manslaughter using the <u>Model Jury Charges (Criminal)</u>, "Murder, Passion/Provocation And Aggravated/Reckless Manslaughter" (N.J.S.A. 2C:11-3a(1) and (2); 2C:11-4a, b(1) and b(2)) (rev. June 8, 2015). Defendant challenges the following section of the jury charge:

> Passion/provocation manslaughter is a death caused purposely or knowingly that is committed in the heat of passion resulting from a reasonable provocation.
>
> Passion/provocation manslaughter has four factors which distinguish it from murder.  In order for you to find defendant guilty of murder, the State need only prove the absence of any one of them beyond a reasonable doubt.  The four factors are:
>
> (1)   There was adequate provocation;
>
> (2)   The provocation actually impassioned defendant;

A-4250-17T1

> (3)    Defendant did not have a reasonable time to cool off between the provocation and the act which caused death; and
>
> (4)    Defendant did not actually cool off before committing the act which caused death.

> The first factor you must consider is whether the State has proven beyond a reasonable doubt that the provocation was not adequate. . . . This is an objective standard and not a subjective standard personal to the defendant.  For example, words alone do not constitute adequate provocation.  On the other hand, a threat with a gun or a knife or a significant physical confrontation might be considered adequate provocation.

As defendant failed to object to the jury charge, we review the claimed error under the plain error standard and may reverse only if the error was "clearly capable of producing an unjust result . . . ."  R. 2:10-2; State v. Torres, 183 N.J. 554, 564 (2005).  "[A] defendant waives the right to contest an instruction on appeal if he does not object to the instruction."  Torres, 183 N.J. at 564.  Without an objection, "there is a presumption that [a] charge was not error and was unlikely to prejudice the defendant's case."  State v. Singleton, 211 N.J. 157, 182 (2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)).

We have identified five factors to consider when reviewing a claim of plain error in a jury instruction:

(1) the nature of the error and its materiality to the jury's deliberations;

(2) the strength of the evidence against the defendant;

(3) whether the potential for prejudice was exacerbated or diminished by the arguments of counsel;

(4) whether any questions from the jury revealed a need for clarification; and

(5) the significance to be given to the absence of an objection to the charge at trial.

[State v. Docaj, 407 N.J. Super. 352, 365-66 (App. Div. 2009) (citations omitted).]

The crime of murder may be reduced to manslaughter when it is "committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). In this case, the jury charge gave two examples of reasonable provocation including "a threat with a gun or a knife" and "a significant physical confrontation." Defendant argues that mutual combat is also considered adequate provocation but was not sufficiently incorporated in the instruction. He claims the trial court insinuated by its examples that defendant had to be physically assaulted by Ortiz in order to have been provoked under the statute. Because the jurors were not instructed that mutual combat constitutes provocation to reduce murder to passion/provocation manslaughter, defendant asserts he was denied his right to a fair trial.

10

In Docaj, we reviewed an erroneous jury charge on passion/provocation manslaughter. The trial court in that case instructed that the jury had to find "the acts which caused death [were] inadequate for the return of a reasonable person's self-control" instead of adequate. Docaj, 407 N.J. Super. at 364 (emphasis added). In applying the plain error standard, in the context of an erroneous instruction on passion/provocation manslaughter, we considered "whether the error made it easier for the State to get a conviction for murder as opposed to passion/provocation manslaughter." Id. at 362. We concluded in Docaj that the error was "isolated rather than pervasive in the charge" because "[w]hen the error alleged concerns only a portion of the charge, the challenged portion is not to be 'dealt with in isolation but . . . should be examined as a whole to determine its overall effect[,]'" and the rest of the charge brought clarity to the mistake. Id. at 363-64.

Here, the trial court used the model jury charge on passion/provocation manslaughter, which includes all the necessary elements to find defendant guilty of murder or the lesser included offense of passion/provocation manslaughter. The charge included a description of the lesser included offense which is set forth in N.J.S.A. 2C:11-4(b)(2) as "[a] homicide which would otherwise be

11

murder . . . [that] is committed in the heat of passion resulting from a reasonable provocation."

In its instruction, the trial court set forth the required elements of passion/provocation manslaughter, explaining the jurors must find "(1) [t]here was adequate provocation; (2) [t]he provocation actually impassioned defendant; (3) [d]efendant did not have a reasonable time to cool off between the provocation and the act which caused death[;] and (4) [d]efendant did not actually cool off before committing the act which caused death." See State v. Mauricio, 117 N.J. 402, 411 (1990). The court also instructed that if any one of those factors are not met, and defendant purposely or knowingly caused the individual's death, defendant must be found guilty of murder.

Defendant contends that placing the phrase, "physical confrontation" immediately after "threat with a gun or knife" implies that a conflict is only adequate provocation when it is one-sided. And defendant argues the phrasing insinuates he had to be physically assaulted by Ortiz in order to be adequately provoked under the statute. Further, defendant asserts the trial court did not sufficiently instruct the jury on the possibility of reducing murder to passion/provocation manslaughter on the basis of adequate provocation. We disagree.

Adequate provocation "is a legal term of art" and "encompass[es] a range of situations in which . . . a reasonable [person loses] his [or her] normal self-control." State v. Powell, 84 N.J. 305, 311 n. 4 (1980) (citation omitted). Under common law, one of these situations includes where there is mutual combat, "on equal terms and [with] no unfair advantage taken of the deceased." State v. Crisantos, 102 N.J. 265, 274 (1986).

Other formulations of the rule of mutual combat include if the fight is "enter[ed] into . . . willingly, as distinguished from the case in which one is clearly attacking . . . ; if the intent to kill . . . is formed in the heat of the encounter, rather than in advance . . . ; and if the encounter reaches the proportion of actual physical contact, . . . sufficient to arouse the passions of a reasonable man . . . ." Id. at 275, n. 8. However, "if a person, under color of fighting on equal terms, kills the other with a deadly weapon which he used from the beginning or concealed on his person from the beginning, the homicide constitutes murder." Id. at 275. (citation omitted).

Here, the trial court's language tracked the model jury charge verbatim, and is therefore presumed proper. See State v. R.B., 183 N.J. 308, 325 (2005) (instructing trial courts to follow the model jury charges and read them "in their entirety to the jury."); Mogull v. C.B. Commercial Real Estate Grp., Inc., 162

N.J. 449, 466 (2000) (noting that "[i]t is difficult to find that a charge that follows the Model Charge so closely constitutes plain error").

The trial court issued instructions that tracked the relevant model jury charge and were consistent with the governing law on passion/provocation manslaughter, as set forth above. Contrary to defendant's assertions, the court's instructions correctly informed the jury as to a "significant physical confrontation" and failing to use the "mutual combat" language did not constitute plain error. Importantly, it was the State's burden to prove, beyond a reasonable doubt, that defendant committed murder as opposed to passion/provocation manslaughter. And, a jury's adherence to a court's instruction is presumed. State v. Loftin, 146 N.J. 295, 390 (1996).

Moreover, there is overwhelming evidence in the record to support the jury's verdict that defendant murdered Ortiz. The video footage clearly shows defendant retrieving a knife from his vehicle and pursuing Ortiz prior to any contact between the two. The footage reveals defendant heading toward his car with Ortiz following him. Only after defendant began wielding the knife and pursuing Ortiz did he remove his belt to defend against defendant.

Despite testimony that Ortiz made physical contact with defendant earlier, not captured by video surveillance, there is sufficient, credible evidence to

support the State's version of events. Based upon our careful review of the record, we are satisfied there is ample evidence that defendant's intent to kill or inflict harm did not arise during the heat of a physical encounter. Consequently, an instruction on mutual combat was unnecessary.

Defense counsel's theory of the case was also consistent with the trial court's instruction on "significant physical confrontation," making an additional charge on mutual combat unnecessary. Defense counsel painted a picture of a "five foot two and 120 pound" man (defendant) being provoked by another man "several inches taller and 190" (Ortiz). According to defense counsel's explanation, the video showed Ortiz "at no time trying to back away, at no time trying to avoid a fight," with defendant unable to retreat. Defense counsel described the circumstances leading to passion/provocation manslaughter as defendant being "provoked into fighting . . . caus[ing] him to simply lose self-control. . . . Everything happens, boom, boom, boom, like that. He's insulted, he's hit, he goes to the car. The other man is on top of him virtually. . . . They're back and forth. No one is backing off."

Moreover, while questions from the jury revealed a need for clarification, any confusion was adequately addressed by the trial judge. During their deliberations, the jurors posed three related questions:

Is <u>threat</u> of a significant physical confrontation enough to constitute adequate provocation or must physical contact occur?

Or, put another way, must the <u>threat</u> of significant physical confrontation be more than verbal?

Would following someone to his car constitute enough of a threat of significant physical confrontation to be considered adequate provocation?

The trial court aptly responded:

To answer your question, first I'll remind you that the jury charge should be considered as a whole and you should not pick out any particular part and overemphasize it. In answering your question, I can tell you that words alone are not adequate provocation. Instead of addressing the very specific scenarios in your question, I can tell you that the rule is that the question concerning provocation is whether the claimed provocation was adequate. Whether or not the claimed provocation was adequate will depend upon the facts and circumstances as you find them. A key is whether the loss of self-control, if that occurred, was a reasonable reaction to those circumstances. The standard you must use is an objective one. Said differently, would an ordinarily reasonable, prudent person have lost their self-control under the circumstances as you find them.

Upon hearing the proposed answer to the jury's question, defense counsel responded, "That would be fine." After the trial judge's additional explanation and further viewings of the video, the jury did not request any further clarification.

Because the trial court followed the model jury charge on passion/provocation manslaughter, there was no plain error warranting reversal. Defendant's claim to the contrary clearly lacks merit.

III.

Next, defendant argues that he was denied his right to a fair trial due to several instances of alleged prosecutorial misconduct. First, defendant asserts that during his opening statement, the prosecutor commented "the [S]tate knows that Mr. Serpas murdered the victim." The trial court immediately gave a sua sponte curative instruction to the jury:

> THE COURT: [Prosecutor], stop there. . . . All right. Ladies and gentlemen, during the State's opening statement you just heard refence to what the State knows. What the State knows -- and I'm using air quotes -- or thinks it knows doesn't matter. What matters is the evidence that's going to be presented in this case and the facts that you find. You are to do that independently among yourselves when it's time to deliberate. The comments by the prosecutor as to what the State knows are stricken and are not to be considered in any way, shape or form by you during this case.

Defendant further asserts that the alleged prosecutor's error may have been addressed by the curative instruction, however, the prosecutor continued this theme during his summation. In his summation, the prosecutor used the phrase "the State contends" more than twenty times, and "we know" and the "State

17

thinks" throughout his argument, according to defendant. No objection was made during the prosecutor's summation by defense counsel.

A prosecutor plays two unique roles, having "to represent vigorously the [S]tate's interest in law enforcement and at the same time help assure that the accused is treated fairly and that justice is done . . . ." State v. Mahoney, 188 N.J. 359, 376 (2006) (quoting State v. Ramseur, 106 N.J. 123, 323-24 (1987)). Therefore, "[i]t is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." State v. Farrell, 61 N.J. 99, 105 (1972) (quoting Berger v. United States, 295 U.S. 78, 88 (1935)). While prosecutors are expected to make "vigorous and forceful" arguments to the jury, State v. Frost, 158 N.J. 76, 82 (1999), they are forbidden from advancing improper ones. State v. Lazo, 209 N.J. 9, 29 (2012). Their arguments are bound "to facts revealed during the trial and reasonable inferences to be drawn from that evidence." Frost, 158 N.J. at 85. (citation omitted).

Because of the importance of a prosecutor's role, "prosecutorial misconduct can be a ground for reversal where the prosecutor's misconduct was so egregious that it deprived the defendant of a fair trial." R.B., 183 N.J. at 332 (quoting Frost, 158 N.J. at 82-84). To warrant such a severe remedy, an

appellate court must be convinced the error was "clearly capable of producing an unjust result . . . ." Id. at 330 (alteration in original) (quoting R. 2:10-2). "The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached." Ibid. (alteration in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)). "[E]ven when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008).

It is also well established that a prosecutor is "afforded considerable leeway" during summation, although "a prosecutor must refrain from improper methods that result in wrongful conviction . . . ." State v. Smith, 167 N.J. 158, 177 (2001) (citing Frost, 158 N.J. at 82-83); State v. Harris, 141 N.J. 525, 559 (1995); Farrell, 61 N.J. at 105. However, "'not every deviation from the legal prescriptions governing prosecutorial conduct' requires reversal." State v. Jackson, 211 N.J. 394, 408-09 (2012) (quoting State v. Williams, 113 N.J. 393, 452 (1988)).

A reviewing court evaluates challenged remarks in the context of the summation as a whole. State v. Atwater, 400 N.J. Super. 319, 335 (App. Div.

2008) (citing State v. Carter, 91 N.J. 86, 105 (1982)).  Reversal is warranted only if the remarks were "clearly and unmistakably improper" and "substantially prejudiced the defendant's fundamental right to have a jury fairly evaluate the merits of his or her defense."  State v. Ingram, 196 N.J. 23, 43 (2008) (quoting State v. Harris, 181 N.J. 391, 495 (2004)).

We reject defendant's assertion that the prosecutor's comments during his opening and closing statements deprived defendant of a fair trial.  Whether a curative instruction was adequate depends on, first, "the nature of the inadmissible evidence the jury heard, and its prejudicial effect[,]" second, "an instruction's timing[,]" and third, the context of the case and the court's "tolerance for the risk of imperfect compliance."  State v. Herbert, 457 N.J. Super. 490, 505-08 (App. Div. 2019).

First, the trial court's instruction sufficiently negated any prejudice from the prosecutor's use of "we know" in his opening statement.  "The adequacy of a curative instruction necessarily focuses on the capacity of the offending evidence to lead to a verdict that could not otherwise be justly reached."  Id. at 505 (quoting State v. Winter, 96 N.J. 640, 647 (1984)).  The court's instruction was clear, specifically addressed the problematic statement, and emphasized how it must not be considered by the jury.  Because of the manner in which the

trial court handled the issue, he minimized the improper statement's prejudicial effect.

Second, the court issued the curative instruction immediately, without hesitation and without objection from defense counsel. Because "a swift and firm instruction is better than a delayed one[,]" the court's efficiency here weighs in favor of the instruction's impact. Id. at 505-06. (quoting Winter, 96 N.J. at 648).

Lastly, the context of the error allows for its tolerance. "[E]ven in criminal cases involving errors of constitutional dimension, 'not "any" possibility [of an unjust result] can be enough for a rerun of the trial.'" Id. at 507 (second alteration in original) (quoting Winter, 96 N.J. at 647). Instead, there must be a real possibility that the error "led the jury to a result it otherwise might not have reached." Ibid. (Winter, 96 N.J. at 647). Here, the prosecutor's use of "the State knows" phrase was offered in the context of what the State intended to present and what the evidence would reveal.

Even if the comment was interpreted as an assertion that the State was certain of defendant's state of mind during the incident, the evidence adduced at trial established defendant's purposeful and knowing killing. Defendant also provided extensive argument during trial to refute that point. Ultimately, the

evidence was "compelling and show[ed] the defendant as the aggressor[,]" minimizing the significance of the prosecutor's comment during his opening statement and lessening its prejudicial effect.

In a similar vein, we reject defendant's argument that the prosecutor's use of "the State contends" and "the State thinks" in summation deprived defendant of a fair trial. By saying that the State is arguing a certain point is not an expression of official opinion but the essence of a prosecutor's summation. A prosecutor is afforded wide latitude in summation as long as he "stays within the evidence and the legitimate inferences therefrom . . . ." State v. Mayberry, 52 N.J. 413, 437 (1968).

The prosecutor may not present to the jury an expression of personal or official opinion unless he "makes it perfectly plain that his belief is based solely on the evidence that has been introduced at the trial." State v. Rivera, 437 N.J. Super. 434, 446 (App. Div. 2014). Defense counsel does not cite to any instances in the prosecutor's summation where he referenced facts not presented to the jury or expertise based on his official position. Therefore, we conclude there is no basis to reverse defendant's conviction based on prosecutional misconduct based upon comments made during the prosecutor's opening and closing statements.

The next claimed error by defendant was the prosecutor's presentation of the video footage narrated with his version of the facts:

> The State contends and you'll see this on the video that [Rodriguez] -- and you can see her in this stopped picture right here. She's kind of antagonized by the defendant at this point. Defendant was angry that he got there, that he had to wait, that he had to get up in the morning. So he's already angry. Now he had to wait for her and they're having some words. So she is giving him the "whatever" sort of sign. That's something that you have to determine. That's what the State contends.

No objection was made during the closing statement. We perceive no error because the prosecutor reasonably inferred that Rodriguez's gesture was made out of her frustration based on the evidence produced in the case.

Next, defendant argues that the prosecutor's reference to defendant being imprisoned and to Ortiz as never having been in trouble warrants reversal and a new trial. The following testimony about defendant's incarceration took place during the trial.

[PROSECUTOR]: Do you love [defendant]?

RODRIGUEZ: A little.

[PROSECUTOR]: Did you -- you go to the jail to visit him, right?

[DEFENSE COUNSEL]: Objection.

23

THE COURT: Overruled.

RODRIGUEZ: Sometimes.

[PROSECUTOR]: As a matter of fact, you and I talked this week; right?

. . . .

RODRIGUEZ: Yes.

[PROSECUTOR]: And you told me and a detective that you went and saw him this Saturday; right?

THE COURT: Sidebar.

Before Rodriguez answered the question about visiting defendant, both counsel agreed to the following curative instruction read to the jury:

> Ladies and gentlemen, the last question is stricken. It should not be considered by you. The issue of whether or not [defendant] was held in custody at any point in time is of no moment to your deliberations and your decision upon the issues presented to you and should not play any role whatsoever in your deliberations on this matter.

The curative instruction was promptly given, and the improper question was directed at Rodriguez's potential bias, not to prove defendant's imprisonment. Hence, the curative instruction was sufficient, and reversal is not warranted. See Herbert, 457 N.J. Super. at 505-08

24

Moreover, during the trial, a detective testified that when looking to Ortiz's background, "There wasn't much to find out about him. Immigrant from Central America. He was a laborer. He lived on William Street in Elizabeth. Had never been arrested. That was about it." Later in the State's summation, the prosecutor said:

> For all we know -- and what [we do] know about [Ortiz], besides the fact that he died, is the fact that the officer said -- the detective said he's never been in trouble. He's never been arrested. Does this make sense that this is the kind of character that this man is going to have all of a sudden? He's now moved up from never being in trouble to assaulting some [woman], pulling off belts, fighting someone?

Defendant contends the prosecutor inappropriately characterized the detective's statements about Ortiz never being arrested or in trouble, and in conjunction with the State's insinuation that defendant was incarcerated, led to an implication that defendant acted out-of-character and Ortiz did not. Neither individual had a criminal record.

Defendant's theory of the case was that Ortiz assaulted him first, while the State's theory was that defendant assaulted Ortiz. Therefore, the character of Ortiz was relevant. See N.J.R.E. 404(a)(2) (allowing "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of

the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor . . ."). We conclude the detective properly testified about Ortiz's character to the jury, without objection from defense counsel, and is not reversible error. Based on the evidence the prosecutor reasonably inferred that Ortiz's lack of a criminal record belied defendant's theory that Ortiz was the aggressor.

Defendant also contends that the prosecutor improvidently commented on defendant's pre-arrest silence during his summation. During her cross-examination, Rodriguez testified that after the altercation, neither she nor defendant called the police and "[t]here were other people there."

> But look at some of the things that he didn't do. He never called the police. Come on. He says he's defending himself. He never calls the police. He never calls 9-1-1. He doesn't ask for EMTs. He's not trying to help resuscitate [Ortiz]. . . . He doesn't wait for the authorities to show up. I mean, if you really deep down inside think hey, I was defending myself, you'll stay. He fled.

"[W]hen silence precedes the arrest and the administration of <u>Miranda</u>[2] warnings, the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment do not bar the prosecution from using the silence to impeach the

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

defendant's credibility at trial if he testifies." State v. Stas, 212 N.J. 37, 53 (2012) (citing Jenkins v. Anderson, 447 U.S. 231, 238-41 (1980)). Where "there is no governmental compulsion associated with defendant's pre-arrest . . . silence, when the defendant testifies at trial, and when the objective circumstances demonstrate that a reasonable person in defendant's position would have acted differently," impeachment of defendant's pre-arrest silence is proper. Id. at 57. (quoting State v. Brown, 190 N.J. 144, 158-59 (2007)). Comment on defendant's pre-arrest silence is proper for credibility purposes, but not "as substantive evidence of a defendant's guilt." Id. at 58.

Stated another way, there is no violation of the right to self-incrimination by commenting on pre-arrest silence if, "when viewed objectively and neutrally in light of all circumstances, it generates an inference of consciousness of guilt that bears on the credibility of the defendant when measured against the defendant's apparent exculpatory testimony." State v. Brown, 118 N.J. 595, 615 (1990). Where a reasonable person under similar circumstances to the defendant "would naturally have come forward and mentioned his or her involvement in the criminal episode, particularly when . . . assessed against the defendant's apparent exculpatory testimony[,]" the court may admit evidence of pre-arrest silence. Id. at 613-14. If evidence of defendant's silence is to come in, the trial

court should instruct the jury how the evidence is meant to be used.  Stas, 212 N.J. at 57.

Defendant argues the prosecutor's reference to his silence was not meant to impeach him, but to show he killed Ortiz purposely and knowingly, thereby constituting substantive evidence.  The State disagrees and contends the prosecutor's repeated references in summation to defendant's claim he was trying to defend himself opened the door for the State to impeach his credibility. We discern no error.

There were no allegations of governmental compulsion, defendant testified at trial, and the prosecutor's commentary contained the appropriate substance, namely that it asked the jury to consider whether they would have come forward and mentioned their involvement in the criminal episode under the same circumstances, had the exculpatory evidence of defendant's self-defense been true.  The trial court reminded the jurors on more than one occasion that "closing arguments are not evidence" and that their "recollection of what the evidence is . . . controls."  Therefore, defendant's argument that the State mentioning defendant's pre-arrest silence constituted reversible error is devoid of merit.

Next, defendant argues that the prosecutor's comments in summation relative to the video evidence were improper because they implied only the facts supported by the video footage were reliable. The challenged portion of the prosecutor's summation includes the following:

> [T]his part on the left shows the vestibule of the Imperial Latino Lounge . . . . What happened in front of that door? If you were on trial and you had been accused or blamed of something serious and there was a video that showed it, if you had an excuse or wanted to make an excuse or wanted to fabricate, where would you do it? You would do it in the place where you really can't see what's going on.
>
> Well, the State contends that there are a lot of problems with defense counsel's version of the facts. Remember, videos don't lie.

Defendant asserts he was not responsible for the malfunctioning video camera in the vestibule of the bar, and it is self-evident that a conflict originated in that area before the recorded confrontation, given the demeanor of both men.

We conclude the prosecutor was within his bounds by commenting on the believability of defendant's story. For instance, defendant and Rodriguez testified that Ortiz took his belt off in the vestibule and struck defendant, while the video footage shows Ortiz taking off his belt only after defendant retrieved his knife. This was a fair comment on the evidence, and defendant's contention that prosecutorial misconduct occurred fails.

A-4250-17T1

Defendant also argues that his sentence was excessive. We disagree. Trial judges have broad sentencing discretion as long as the sentence is based on competent credible evidence and fits within the statutory framework. State v. Dalziel, 182 N.J. 494, 500 (2005). When the trial court has applied correct legal principles and sentenced in accordance with the guidelines, we should not overturn the sentence unless it is so clearly unreasonable as to shock the judicial conscience. Id. at 501 (citing State v. Roth, 95 N.J. 334, 363-65 (1984)). If a sentencing judge has identified and balanced the aggravating and mitigating factors, and their existence is supported by sufficient credible evidence in the record, we are obligated to affirm. State v. Cassady, 198 N.J. 165, 180-81 (2009).

Pursuant to N.J.S.A. 2C:11-3(b)(1), "a person convicted of murder shall be sentenced . . . by the court to a term of [thirty] years, during which the person shall not be eligible for parole, or be sentenced to a specific term of years which shall be between [thirty] years and life imprisonment of which the person shall serve [thirty] years before being eligible for parole." The unlawful possession of a weapon charge was punishable up to eighteen months imprisonment and

conviction for third-degree possession of a weapon for an unlawful purpose was punishable up to five years imprisonment.

At the sentencing hearing, the court noted:

> The defendant testified at trial, as did his girlfriend. Both of them lied about the event. Both promoted a story that the victim took off his belt and hit defendant virtually immediately upon leaving the bar. . . . However, the video shows that the victim did not take his belt off until after defendant threatened him with the knife.
>
> The defendant has not accepted responsibility for his actions. He did not do so at trial. He did not do so today . . . . He has maintained his position that the defendant was [not] the aggressor and that he just wanted the victim to go away.
>
> That position is completely and utterly unsupportable, given the video evidence in this case.

For these reasons, we conclude the trial court appropriately applied aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (likelihood that defendant will commit another offense), and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The court found mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (lack of a criminal record), applied but gave it little weight.

Defendant argues the sentencing court erred by not considering mitigating factors, three, five, and eight. Factor three addresses whether defendant acted

31

under "a strong provocation"; factor five considers whether the victim induced or facilitated the crime; and factor eight considers whether defendant's conduct was the result of circumstances unlikely to occur. N.J.S.A. 2C:44-1(b)(3)(5)(8). Defendant argues mitigating factor three applies because Ortiz provoked him by grabbing Rodriguez and following defendant across the parking lot. Similarly, he contends mitigating factor five applies because, not only did Ortiz follow defendant to the car, he did not retreat after defendant brandished the knife. Defendant claims mitigating factor eight applies because he did not have a prior criminal record and the specific circumstances of this case would not present themselves the same way again.

We are satisfied the sentencing court did not err in finding mitigating factors three, five, and eight were inapplicable. As to factors three and five, the record does not support that Ortiz was the initial aggressor. Factor eight is misconstrued by defendant. The fact that defendant had no prior record is not dispositive of this question. State v. Varona, 242 N.J. Super. 474, 491 (App. Div. 1990) (finding that despite the defendant's lack of a prior criminal record, under the circumstances presented, the sentencing court properly found he would commit another crime in the future.) We are unpersuaded by defendant's argument that the sentencing court did not take into account his youth, being

twenty-two years old at the time of the murder.  No viable argument has been presented by defendant as to why the sentencing court should have considered his age as a non-statutory mitigating factor.

We are satisfied that the sentencing court acted well within its discretion in identifying and weighing the aggravating and mitigating factors supported by the evidence, and imposed a sentence within the permissible range for the offense.  State v. Bieniek, 200 N.J. 601, 608 (2010).  As the court applied correct legal principles, and the sentence is amply supported by the record and does not shock our judicial conscience, we discern no basis to disturb it.  Roth, 95 N.J. at 363-64.

V.

Finally, we address the arguments raised in defendant's supplemental pro se brief.  Defendant contends that the trial court erred by not sua sponte charging the jury on self-defense because there was ample evidence to warrant its inclusion.  This argument is devoid of merit.

"When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense." N.J.S.A. 2C:1-8(a).  A trial court "shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the

defendant of the included offense." N.J.S.A. 2C:1-8(e). And, the use of force in self-protection, N.J.S.A. 2C:3-4, and the use of force for the protection of other persons, N.J.S.A. 2C:3-5, are not lesser included offenses for the crime of murder, but serve as defenses to those crimes.

Saliently, in order for self-defense to have been considered here, defendant would have been obligated to serve "written notice on the prosecutor if [he] intend[ed] to rely on . . . General Principles of Justification, 2C:3-1 to 2C:3-11 . . . ." R. 3:12-1. Defendant did not serve the required written notice on the prosecutor. The record shows that the issue of self-defense was addressed by the trial court during defense counsel's opening statement:

> [DEFENSE COUNSEL]: [I]n real life a homicide can lack some of the elements that rise to the level of a murder. It can be an aggravated manslaughter or a manslaughter or even self-defense. I ask you to pay careful --
>
> THE COURT: Sidebar.
>
>    . . . .
>
> THE COURT: [Counsel], I didn't see a [Rule] 3:12 notice on self-defense. My understanding is self-defense is not in the case.
>
> [DEFENSE COUNSEL]: I think we discussed this from the beginning that it was.

[PROSECUTOR]: Passion/provocation and you're talking he might have a gun and defending against a gun.

THE COURT: The only discussion I was party to was in chambers and it was a fair warning to the State that the defendant might argue for passion/provocation. There was no reference to self-defense. Self-defense is a complete defense and requires a notice. There's been no notice, formal or informal.

. . . .

[PROSECUTOR]: My question is that the jury be asked to -- that that be stricken from the record because of the lack of notice and that it's improper.

THE COURT: [Defense counsel].

[DEFENSE COUNSEL]: I have no problem if you want to strike that.

Therefore, self-defense was never a part of this case and no jury instruction on self-defense was required.

Lastly, defendant argues the State failed to prove he caused Ortiz's death purposely or knowingly, and that the killing was not in the heat of passion resulting from reasonable provocation. Defendant cites to Ortiz trying to take Rodriguez forcibly, physically attacking him at first with his belt, and charging at him while defendant walked to his car.

A jury's verdict should not be disturbed simply because reasonable minds may have reached a different conclusion after considering the evidence. "Rather, our obligation is to determine whether there is adequate evidence to support the judgment rendered below." State v. Emery, 27 N.J. 348, 353 (1958). Based upon our careful review of the record, we are satisfied that the jury heard the facts of the case, considered arguments of counsel, and received appropriate instructions from the trial court. There is ample support for the jury's finding of defendant's guilt based upon sufficient, credible evidence and therefore, a new trial is not warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION